Erwin **LANDGREBE** et ux., Appellants,

v.

**ROCK HILL OIL COMPANY** et al.,
Appellees.

No. 12710.

Court of Civil Appeals of Texas.

San Antonio.

Nov. 17, 1954.

Rehearing Denied Dec. 15, 1954.

Fischer, Wood, Burney & Nesbitt, Corpus Christi, Dougherty & Morrill, Beeville, for appellants.

R. A. Weinert, Seguin, Vinson, Elkins, Weems & Searls, James W. McCartney,

Thomas Fletcher, Houston, Linton S. Benge, Goliad, Guittard & Henderson, Victoria, for appellees.

## W. O. MURRAY, Chief Justice.

Rock Hill Oil Company is the lessee in an oil and gas lease covering 290.22 acres of land, at one time owned by Henry Landgrebe and wife, Kate Landgrebe, both now deceased, composed of three tracts; Tract No. 1 containing 150 acres, and Tracts Nos. 2 and 3 containing 140.22 acres (one time thought to contain 141.66 acres), all three tracts of land being out of the Thomas Hancock and M. Williams Surveys in Goliad County, Texas. The question here presented is whether or not this lease at the present time, under the circumstances herein, is a pooled or communitized lease, calling for a payment of royalties among the owners of the land in proportion to the number of acres owned by each and covered by the oil and gas lease here involved.

The trial court held that the lease is a pooled or communitized lease, and that all the heirs of Henry and Kate Landgrebe who have not sold their interest are entitled to have the royalties from the lease apportioned among them, according to the number of acres owned by each in the 290.22 acre tract. From that judgment Erwin Landgrebe and his wife have prosecuted this appeal.

Appellants have made a clear and accurate statement of the facts, subject to one criticism made by appellees, and we here adopt this statement, changing it in one place to meet appellees' criticism.

"Prior to the death of Henry Landgrebe in 1934, he and his wife, Kate Landgrebe, owned as community property the three tracts of land involved in this suit. One tract contained 150 acres and the other two tracts contained a total of 140.22 acres, then thought to be 141.66 acres. For convenience, the tracts will be designated hereafter as they were in the oil and gas lease out of which this litigation arose, i. e., the 150 acre tract will be designated as Tract No. 1, and the 140.22 acres will be designated Tracts Nos. 2 and 3. Henry and Kate Landgrebe had nine children, all of whom survived their parents. Henry Landgrebe died testate on June 19, 1934. In his will he provided that under certain conditions, his son, Erwin Landgrebe, the appellant, should be allowed to purchase the 150 acre Tract No. 1. Henry Landgrebe devised all of his property to his wife, Kate, for life and gave her the right to sell it if she considered it necessary for her comfort or support, and to dispose of the proceeds as she saw fit. After the death of Henry Landgrebe, and by deed, dated September 4, 1934, Kate Landgrebe conveyed the 150 acre Tract No. 1 to Erwin Landgrebe, reserving a life estate and the right to receive the rents, profits, income and revenue from said Tract No. 1, during her life. It should be noticed that Kate Landgrebe did not reserve merely a life estate, but specifically reserved the 'rents, profits, income and revenue' derived therefrom during her natural life. Thereafter, on March 15, 1940, Kate Landgrebe and eight of her nine children executed an oil and gas lease covering all three tracts of land, then estimated to comprise a total of 291.66 acres. One of the children, L. W. Landgrebe, did not execute this lease. Kate Landgrebe died on the 27th day of March, 1945, without having disposed of any of the real estate except for the execution of the oil and gas lease (and the granting of a royalty conveyance which does not affect this case), and devised her land to her nine children, equally. About three months later, by deeds dated June 30, 1945, the nine children of Kate Landgrebe executed partition deeds among themselves, partitioning, separating, and segregating the lands which they had theretofore held in common, so as to thereafter hold in severalty. (Appellees contend that Tract No. 1 was not affected by these partition deeds, and that the partition was only as to Tracts Nos. 2 and 3, containing an aggregate of 140.22, acres, each child receiving a tract of 15.-58 acres. This matter will be discussed later.) It should be noticed at this point that prior to the death of Kate Landgrebe,

Erwin Landgrebe, pursuant to the instructions in his father's will, had purchased the 150-acre Tract No. 1, for a cash consideration of $4,000.00. Tracts Nos. 2 & 3 were owned, prior to the death of Kate Landgrebe, by Kate Landgrebe, to the extent of a one-half undivided interest, and by each of the nine children, to the extent of one-eighteenth undivided interest. Upon her death, each of the nine children became entitled to a one-ninth undivided interest in Tracts Nos. 2 & 3, or an undivided interest of 15.58 acres, received from their father and mother. A re-survey was made at this time, June 15, 1945, at which time Tracts Nos. 2 and 3 were found to contain 140.22 acres, each child owning 15.58 undivided acres. On June 30th, 1945, the children each owned an undivided interest of 15.58 acres, except that Erwin Landgrebe owned 165.58 acres, being his 15.58 acre tract, plus his 150 acres, which he had purchased for $4,000.00. Thereafter, and as soon as the probate proceedings were completed on the Estate of Kate Landgrebe, Deceased, the nine children by the execution of general warranty deeds partitioned among themselves all the lands which they had theretofore held in common. These partition deeds were in the form of general warranty deeds and made no specific reference to minerals, or to the existing oil and gas lease on the entire properties. Each child immediately received his own deed, had it recorded, and the tax rendition changed.

"Thereafter, in about January, 1950, the lessee brought in a gas and gas distillate well on the 150 acre Tract No. 1, owned by Erwin Landgrebe. No market being available at the time, shut-in gas royalty payments were made by the Lessee to the nine children, in accordance with the contentions made by each at the time. However, when the well was put on production, and the children of Henry and Kate Landgrebe were in dispute as to who was to receive the royalty from such well, the Rock Hill Oil Company, and others, filed their petition in this case, naming the children of Henry and Kate Landgrebe defendants and asking that the court determine the ownership of the royalties from past and future production.

"Erwin Landgrebe, owner of the 150 acre Tract No. 1, on which the well was situated, filed his answer and cross-action asserting that he was entitled to the royalty and that the other children had no interest therein. Mary Sievers, one of the eight brothers and sisters, disclaimed in favor of Erwin Landgrebe, in effect adopting the allegations of his cross-action. The other Landgrebe children filed their answer alleging that they were entitled to the royalties from the well on Erwin Landgrebe's Tract, in the proportion that their 15.58 acre Tracts now held by them in severalty bears to the entire acreage covered by the lease, i. e., 290.22 acres, as found on re-survey. For convenience, this group of Landgrebe children who claim adverse to Erwin Landgrebe were referred to hereafter as the 'Landgrebe Defendants'. The South Texas Development Company and D. E. Kinney claim through an assignment from Erwin Landgrebe, and have adopted the allegations contained in his cross-action. The trial court held that the owners of the 15.58 acre Tracts were entitled to participate in the royalty from the production on Tract No. 1 in the proportion that their acreage bore to the entire 290.22 acres under lease. The holding of the trial court is based upon the proposition that the oil and gas lease was a pooled or communitized lease at the time of its execution, and that neither the death of Kate Landgrebe, nor the partition deeds, nor the parol partition, nor any other occurrence effected a segregation of such royalties.

"The parties stipulated that the plaintiffs have a valid subsisting oil and gas lease on the entire 290.22 acres, and no issue in that connection is presented in this case. Subsequent to the partition of June 30, 1945, and on August 30, 1945, L. W. Landgrebe, one of the nine children, executed a ratification agreement to the oil and gas lease, so that his 15.58 acres are now covered by the lease."

Appellants' first point is that the trial court erred in holding that the execution

of the oil, gas and mineral lease involved herein resulted in a pooled or communitized lease.

At the time the lease was signed, Kate Landgrebe owned a life estate in all three tracts, with a further right of disposal if necessary for her comfort or support. Erwin Landgrebe had purchased Tract No. 1, consisting of 150 acres, subject to his mother's life estate and right of disposition. The nine Landgrebe children, including Erwin, owned a one-ninth undivided interest in Tracts Nos. 2 and 3, subject to their mother's undivided one-half community interest in one-half of these tracts and her life estate in the other one-half undivided interest and her right to disposition. Kate Landgrebe and all of her nine children, except L. W. Landgrebe, executed the oil and gas lease out of which this litigation grew. Later L. W. Landgrebe ratified the same, and thus at the time the lease was executed Kate Landgrebe and her children had various interests in the different parts of these three tracts. Under such circumstances the lease was a pooled or communitized lease and the trial court properly so held. Parker v. Parker, Tex.Civ.App., 144 S.W.2d 303; French v. George, Tex.Civ. App., 159 S.W.2d 566; Southland Royalty Co. v. Humble Oil & Refining Co., 151 Tex. 324, 249 S.W.2d 914. It is true that Erwin Landgrebe testified that he had never heard of a pooled or communitized lease at the time he executed this lease and that he did not intend to execute such a lease. We have serious doubts as to the admissibility of that testimony, in the face of the written lease and the rule of property established by Parker v. Parker, supra, and French v. George, supra. See also, 17 Tex.Jur. 858; Evidence—Civil Cases, § 390; Roundtree v. Gilroy, 57 Tex. 176; Connor v. Brown, Tex.Civ.App., 226 S.W.2d 229; Murphy v. Dilworth, 137 Tex. 32, 151 S.W.2d 1004. If the evidence was admissible the finding of the trial court was against this testimony, and the weight and credibility of the testimony coming from an interested party was for that court. Neither was the hearsay declaration contained in the quitclaim deed of Mary Sievers, one of the nine children, to Erwin Landgrebe, made after this controversy arose, binding on the trial court. We overrule appellants' first point.

Appellants' second point is, "The trial court erred in holding that, assuming that the lease was ever a pooled or communitized lease, it remained pooled or communitized after the death of Kate Landgrebe." It is pointed out by appellants that upon the death of Kate Landgrebe her nine children, by her will, acquired an undivided one-half interest in Tracts Nos. 2 and 3. They also acquired for the first time the right to receive any royalties on the other undivided one-half interest in these tracts. Erwin Landgrebe's title to the 150-acre Tract No. 1 ripened into a full fee simple title upon the termination of his mother's life estate and her reservation contained in the deed to him. In other words, there was a material change in the ownership of these tracts upon the death of Kate Landgrebe. We might further state that the rights of all nine children were subject to the terms of the oil and gas lease which was their right to receive a pro rata part of all royalties from the entire 290.22 acres in proportion to their undivided interest in the whole, unless the death of their mother had the effect of converting this pooled or communitized lease into a de-pooled or decommunitized lease.

Appellants contend that this was the effect of Kate Landgrebe's death, and cite such cases as Japhet v. McRae, Tex.Com. App., 276 S.W. 669; Thomas Gilcrease Foundation v. Stanolind Oil & Gas Co., Tex., 266 S.W.2d 850; Stephenson v. Glass, 115 Tex. 192, 279 S.W. 260; Hinds v. McCord, Tex.Civ.App., 45 S.W.2d 442; Mueller v. Sutherland, Tex.Civ.App., 179 S.W. 2d 801; Garza v. De Montalvo, 147 Tex. 525, 217 S.W.2d 988. These cases are not in point because they do not deal with a situation such as we have here, where all of the children joined in the original lease which was binding upon their heirs and assigns and subjected their interest in the property to a pooled or communitized lease.

The Garza v. De Montalvo case is not in point because in that case, after the mother's death, one of the heirs deeded the 53-acre tract which he owned to the other heirs, and then all of the children perfected a partition of the entire tract, so that thereafter each owned a divided interest, whereas theretofore he had owned an undivided interest, and each warranted the title to each other child's tract, so that thereafter none of the children were in a position to assert any claim against that part held by another child, all of which met with the approval of the lessee. Here the situation is quite different. Erwin did not convey his separate 150-acre tract to his sisters and brothers and receive back his divided share in the entire tract. He simply retained his 150-acre tract and participated in the partitioning of Tracts Nos. 2 and 3. After the mother's death and before the partition of Tracts Nos. 2 and 3, the lease being a pooled or communitized lease, each child was entitled to receive a proportionate share of the royalty of the entire 290.22-acre tract, and by engaging in a partition of only a part of the entire tract, he did not lose his right to participate in the royalty to be derived from the 150-acre tract, because that tract was not and could not be affected by a partition of Tracts Nos. 2 and 3. Prior to the partition the children, other than Erwin, had a 15.58 acre interest in the royalty derived from the 290.22-acre lease. After the partition they still held this interest in the 150-acre tract, because they had done nothing to lose such interest.

■ It is pointed out by appellants that under such circumstances appellees might claim they have a 15.58/290.22 interest in the royalty derived from Erwin's 150-acre tract and at the same time claim all the royalty that might be derived from their separate 15.58-acre tract set aside to them in the partition. Appellees do not so contend.

Their contention throughout their brief is that the entire lease remained a communitized lease after the partition of the 140.22 acres, as it was before such partition. They make it plain in their brief that they think it possible that they might have contended that after the partition the lease as to the 150-acre tract remained a communitized lease, while the lease as to the 140.22 became a de-communitized lease, but that they do not so contend. Thus it is unnecessary for us to pass upon this question.

What we have said above disposes of appellants' third point.

■ Appellants' next contention is that there was a parol partition, as well as a written partition, and that the oral partition was sufficient to de-communitize the lease. We readily agree that in this State a partition may be by parol. Shell Petroleum Corporation v. Railroad Commission, Tex.Civ. App., 116 S.W.2d 439. However, whether the partition was by deed or by parol, as long as it related only to Tracts Nos. 2 and 3, and did not relate to Tract No. 1, it would not have the effect of de-communitizing the entire lease, either as to the Landgrebe children or as to the lessee oil company.

■ Appellants' fifth and last point is to the effect that in view of the fact that the partition deed referred to a map, and that map showed the 150-acre tract owned by Erwin Landgrebe, the partition might be regarded as a partition of Tract No. 1 also. We cannot agree with this contention. It is clear from the record that the Landgrebe children intended a partition of tracts Nos. 2 and 3 only, and we may presume the trial court so found.

The judgment of the trial court will be affirmed.