**Edwin P. WARD et al., Appellants,**

v.

**Arnold O. GOHLKE et al., Appellees.**

No. 12829.

Court of Civil Appeals of Texas.

San Antonio

April 27, 1955.

Rehearings Denied June 1, 1955.

Fulbright, Crooker, Fountain, Bates & Jaworski, John M. Jamison, L. Keith Simmer, Vinson, Elkins, Weems & Searls, Baker, Botts, Andrews & Shepherd, Hugh M. Patterson, Wiley N. Anderson, Jr., Joyce Cox, Fountain, Cox & Gaines, Houston, for appellants.

Guittard & Henderson, Victoria, Crain & Crain, Cuero, Black & Stayton, Austin, Barksdale Stevens, W. J. Williamson, Houston, Wayne Hartman, Cuero, R. H. Whilden, Houston, for appellees.

NORVELL, Justice.

The subject matter of this lawsuit consists of four tracts of land situated in DeWitt County, Texas, and covered by an oil, gas and mineral lease held by the Shell Petroleum Company. This lease is identified by the company as No. 17096. Three of these tracts were the community property of Fred W. Gohlke and his wife, Helene Gohlke, both deceased. The fourth tract, upon which four of the five producing wells under the lease are located, was the separate property of Fred W. Gohlke. The dispute is essentially between the nieces and nephews of Fred W. Gohlke, Edwin P. Ward et al., who claim as devisees under his will, and the executors and devisees named in the last will and testament of Helene Gohlke.

The principal questions presented relate to the doctrine of. election as applied to the residuary clause of Fred W. Gohlke's will; the construction of some five written instruments making up the Shell lease, insofar as they govern and control the respective

royalty interests of the parties (i. e., whether these royalty interests are pooled or not), and the contention that such instruments should be reformed in certain particulars. Some of the Fred W. Gohlke devisees stand in a somewhat different position from the majority, and they present varying contentions that will also be discussed.

The trial court peremptorily instructed the jury to find for the Helene Gohlke executors and devisees, who claimed that the royalty interest under the four tracts was pooled and that the Helene Gohlke devisees owned 38.29 per cent of the royalty, while the Fred W. Gohlke devisees owned 61.71 per cent thereof. (Arnold Gohlke, while one of the Fred W. Gohlke devisees, was also one of the executors of the Helene Gohlke estate. In this litigation he and his brother Fritz Gohlke, as individuals, take the same position as the Helene Gohlke devisees.) The stated percentages were based upon the theory that of the 734.5 acres covered by the lease, three tracts, aggregating 562.5 acres, were the community property of Fred W. and Helene Gohlke, and that she died possessed of a one-half interest therein, which passed to her devisees by will, and that the royalty interest in these three tracts was pooled with a 172-acre tract which was the separate property of Fred W. Gohlke and now held by his devisees, who likewise held a one-half interest in the three tracts aggregating 562.5 acres.

Upon the issue of election, the Fred W. Gohlke devisees, Edwin P. Ward et. al., contend that the residuary clause of the will of Fred W. Gohlke disclosed a clear and certain intention on his part to dispose of not only his but also his wife's interest in their community property. The pertinent provisions of the will read as follows:

"Second. I give to my beloved wife, Helene Gohlke, all of my notes, money, cattle and horses, absolutely, save and except fifteen milk cows and sufficient workhorses and mules, to work the home place, as hereinafter provided; said notes, money, cattle, mules and horses to be her individual property to be disposed of as she may see fit.

"Third. I give to my beloved wife, Helene Gohlke, a life interest in all of my real estate and personal property, wheresoever located, to be used and enjoyed by her during her natural life.

"Fourth. After the death of my said wife, I give to my nephew, Arnold O. Gohlke, son of W. F. Gohlke, the one hundred thirteen acres of land, more or less, known as my home place, in fee simple, together with fifteen milk cows, all farming tools and etc., on said place, and all household and kitchen furniture in the house, and also sufficient number of horses and mules to properly work and cultivate said one hundred thirteen acres of land, more or less.

"Fifth. After the death of my beloved wife, I give all the residue of my estate to my nieces and nephews, children of my brothers and sisters, to be equally divided among said nieces and nephews. In the event of the death of any of said nieces or nephews prior to the death of my said wife, I give the interest said nieces and nephews would receive to their respective children, and in the event they shall have no children, then said property is to be divided equally between my nieces and nephews then living."

In our opinion, the rule of Avery v. Johnson, 108 Tex. 294, 192 S.W. 542, is applicable and controlling here. It can not be said that the fifth clause of the will above set out is "open to no other construction" than that Fred W. Gohlke intended to dispose of his wife's community interest as well as his own in and to property not specifically theretofore disposed of. The words, "I give all the residue of my estate" may be reasonably construed as applying only to that portion of the community estate he actually owned, despite the fact that in preceding clauses of the will, where a definite tract of land or particular article of personal property is described, it may appear certain that insofar as that clause

is concerned a disposition of his wife's interest, as well as his own, was contemplated. In Wright v. Wright, Tex., 274 S.W.2d 670, the Supreme Court recently considered the contention that as the words "my property" or similar possessive expressions were used in one clause of a will as comprehending the community interest of both spouses, such expressions must necessarily be given a similar meaning throughout the will. This view was rejected and it was held that although the sense in which the possessive expressions were used in various clauses of the will was pertinent, nevertheless, if the wording of the particular clause involved was open to the construction of referring only to property which the testator actually owned, that construction would be adopted. In the later case of Hodge v. Ellis, Tex., 277 S.W.2d 900, the rule of the Wright case was reaffirmed. In view of the Supreme Court's recent pronouncements and reconsiderations of the applicable authorities, we need not discuss the matter further. In our opinion, the present case can not be distinguished from Wright v. Wright, supra.

Shell Lease No. 17096 was one of a number of leases executed by members of the Gohlke family, covering various lands in DeWitt County, Texas. It is sometimes referred to in conveying and ratifying instruments as Lease No. 2; this number being used to designate the particular lease as among others executed by the Gohlkes. Lease No. 17096, as above indicated, was evidence by five separate instruments and was taken by Shell in place of a prior lease executed in 1940. The written instrument signed by a majority of the lessors, which we shall for convenience refer to as the primary instrument, bears date of August 4, 1945, and was signed by the following parties lessor: Helene Gohlke, Edwin P. Ward, Myron F. Ward, Henry G. Ward, W. F. Lobenstein, Edward Lobenstein, Adeline Stork, Mrs. Frieda Boehl, A. O. Gohlke, Fritz Gohlke and Venor H. Gohlke (names of spouses signing as such have been omitted). The parties lessor were described as "the undersigned heirs and devisees under the will of Fred W. Gohlke, deceased, as shown by Probate Cause 1726 of the Probate Minutes of DeWitt County, Texas." All of those above named were devisees under the will of Fred W. Gohlke.

Four tracts were described, containing 406.5, 127.6, 28.4 and 172 acres, respectively. At the time of the execution of the lease, Helene Gohlke owned an undivided one-half (community) interest in tracts Nos. 1, 2 and 3, and, under the will of her deceased husband, held a life estate in the remaining one-half interest, as well as a life estate in tract No. 4, which was the separate property of Fred W. Gohlke. The remaining interests were owned by the other parties lessor to this instrument and certain other devisees under the will of Fred W. Gohlke, who did not become parties to the lease at this time.

The lease contained the following clauses, among others:

"It is lessor's intention to lease and lessor does hereby grant, lease, and let unto lessee, in addition to the land above described, all land and interest in land owned or claimed by lessor by limitation, possession, or otherwise, contiguous, adjoining, or adjacent to the land above described. * * *

"If this lease covers a less interest in the oil, gas, sulphur, or other mineral than the entire and undivided fee simple estate (whether lessor's interest is herein specified or not), or no interest therein, then the royalties, rentals, and other moneys herein provided for shall be paid lessor only in the proportion which the interest, if any, covered by this lease, bears to the whole and undivided fee. * * *

"This lease shall be binding upon each party who executes it without regard to whether it is executed by all those named therein as lessor."

As between those actually signing, this lease and the respective interests owned by them, regardless of source or origin of title, the lease was a pooled or unitized lease, under the holding of Parker v. Park-

er, Tex.Civ.App., 144 S.W.2d 303, wr.ref., which is now established as a rule of property in this State. Southland Royalty Co. v. Humble Oil & Refining Co., 151 Tex. 324, 249 S.W.2d 914; French v. George, Tex.Civ.App., 159 S.W.2d 566, wr.ref.; Landgrebe v. Rock Hill Oil Co., Tex.Civ. App., 273 S.W.2d 636; Hoffman, Voluntary Pooling and Unitization.

■ This primary instrument was subject to joinder and ratification by other persons owning interests in the tract described. Alma Gohlke became a party to the lease by executing a form of lease identical in terms with that executed by Helene Gohlke and others. Veal v. Thomason, 138 Tex. 341, 159 S.W.2d 472. In addition to the wording of the instrument itself, it was shown that Alma Gohlke resided in North Carolina and that an identical copy of the lease was sent to her for her signature, because Shell did not wish to run the risk of having the lease form signed by Helene Gohlke, Edwin P. Ward and others, lost in the mail or otherwise misplaced. The fact was explicitly stated in the letter written by the Shell representative, which accompanied the form of lease afterwards signed and returned by Alma Gohlke.

On February 15, 1949, William H. Dahme, one of the devisees under the last will of Fred W. Gohlke, ratified the primary lease. In this ratification, the four tracts of land were described and it was expressly provided that the undersigned (in this case Dahme) adopted, ratified and confirmed said lease as of the date of its execution. On July 5, 1949, Adeline Stork, joined by her husband, W. J. Stork, executed a ratification in identical terms.

On June 6, 1952, Adeline Stork, who was a niece of Fred W. Gohlke, died, leaving one son, W. J. Stork, Jr. On November 2, 1952, Mrs. Helene Gohlke died, and thereafter on April 2, 1953, W. J. Stork, Jr., joined by his wife, executed a ratification of the primary lease. As part of the consideration for this ratification, W. J. Stork, Jr., received an overriding royalty and; as dispute had arisen as to the proper distribution of royalty fixed by the primary

lease, the W. J. Stork, Jr., ratification contained a special clause relating thereto. The pertinent provisions of this ratification are as follows:

"Stork and wife Barbara Ann Stork hereby ratify, confirm, and adopt Lease No. 2 as to all of the lands covered by Lease No. 2 and hereby agree that said Lease No. 2 is in full force and effect and binds all interest owned by Stork on or after August 4, 1945, the date of said lease, in said lands covered by Lease No. 2, and Stork and wife Barbara Ann Stork hereby grant, lease, and let unto Shell, its successors and assigns, upon all of the terms and conditions set out in Lease No. 2 all of the lands covered by Lease No. 2 and all interest owned by Stork on or after August 4, 1945, in said lands covered by Lease No. 2. * * *

"It is understood that there now exists a dispute between the Executors under the Will of Mrs. Helene Gohlke, deceased, and the Devisees under the Will of Fred W. Gohlke, deceased, as to whether the royalties under the Lease No. 2 as to all lands covered thereby should be computed on a pooled basis or an unpooled basis. Stork and his wife, Barbara Ann Stork, in executing this instrument, do so without in any way prejudicing their right (or the right of other Devisees under the Will of Fred W. Gohlke, deceased) to claim as against the Executors and/or Devisees under the Will of Mrs. Helene Gohlke, deceased, that their royalty interests should be computed on an unpooled basis."

■ Those who executed the ratifications above mentioned became parties to the primary lease by virtue of said action and their royalty interests became pooled or commingled as if they had been parties to the primary instrument. Landgrebe v. Rock Hill Oil Co., Tex.Civ.App., 273 S.W. 2d 636.

The last paragraph of the W. J. Stork, Jr., ratification, above quoted, was clearly a

"no prejudice clause." While Stork ratified the primary lease *as written,* it was without prejudice to his *claim* that the royalty interests under the primary lease were not pooled. Neither this · clause nor the instrument taken as a whole provides that Stork's royalty interest (with the exception of ·the override) shall not be pooled, but leaves the matter to a construction of the primary instrument.

■ In our opinion, the trial court was correct in holding that the royalty interests of the parties involved were pooled and rendering judgment accordingly. This relationship arose as a matter of law as the result of the contract executed by the parties, and in the absence of a showing of fraud, accident, or mistake, parol evidence was inadmissible to show that the parties did not intend the result which arises from the use of the words employed by them in setting forth their written contract and agreement. Murphy v. Dilworth, 137 Tex. 32, 151 S.W.2d 1004; Landgrebe v. Rock Hill Oil Co., Tex.Civ.App., 273 S.W.2d 636; 17 Tex.Jur. 858, Evidence, Civil Cases, § 390.

■ We are likewise of the opinion that no case of fraud or mistake is disclosed by the evidence, which would justify a reformation of the lease or raise an estoppel as to the enforcement· of its terms as written. The instrument, insofar as the royalty obligations are concerned, is a three-way contract between and among the lessee and the parties lessor. While a unilateral mistake may be grounds for cancellation, it obviously cannot be ·made the basis of a reformation which proceeds upon the theory that a contract has been made but the written instrument does not correctly reflect the contract. The "mistake" seemingly relied upon relates· to the nature and extent of the title held by Helene Gohlke in and to the three community tracts. This property was inventoried as community property by Helene Gohlke, acting as executrix under the last will and testament of Fred W. Gohlke, and there is scant basis for a claim of any mistake. However that may be, a

showing of mutual mistake among the contracting parties was not made. Perez v. Everett, 73 Tex. 431, 11 S.W. 388; 45 Am. Jur. 617, Reformation of Instruments, § 55; 36, Tex.Jur. 712, Reformation of Instruments, § 1.

Various briefs have been filed by parties appellants. We have examined all the points contained therein and are of the opinion that none of them discloses · a reversible error. Accordingly, the judgment of the trial court is affirmed.