**Alan Brad KENT, Individually and as Independent Executor of The Estate of Linda Ann McWhorter, Deceased, and Cassie Elizabeth Kent, Appellant**

v.

**Tommy Joe HOLMES, Appellee.**

No. 06–03–00071–CV.

Court of Appeals of Texas, Texarkana.

Submitted May 12, 2004.

Decided June 30, 2004.

Steven M. Dowd, Law Offices of Steven M. Dowd, Austin, TX, for appellant.

Raymond C. Winter, Assistant Attorney General, Law Enforcement Defense Division, Austin, TX, for Teacher Retirement System of Texas–Amicus Curiae.

Robert Underwood, Carthage, TX, for appellee.

Before MORRISS, C.J., ROSS and CARTER, JJ.

## OPINION

Opinion by Justice CARTER.

The dispute in this case concerns the distribution of a retirement annuity from the Teacher Retirement System of Texas (TRS) accumulated by Linda Ann Holmes McWhorter. After McWhorter retired from her teaching career, she and her husband, Tommy Joe Holmes, obtained a divorce. The divorce decree granted McWhorter sole right to the retirement benefits and divested Holmes of any right to the benefits. TRS refused to recognize the divorce decree as a court order which changed the beneficiary of the annuity and determined the form on which McWhorter attempted to change beneficiaries did not suffice. McWhorter died before TRS approved a beneficiary change. On McWhorter's death, TRS began making annuity payments to Holmes. Alan Brad Kent, individually and as independent executor of the estate of Linda Ann McWhorter, deceased, and Cassie Elizabeth Kent (collectively "the Kents") appeal from a partial summary judgment in Holmes' favor. The Kents raise nine issues on appeal. We affirm in part, reverse in part, and remand for a trial on the merits consistent with this opinion.

### Facts

On May 31, 1997, McWhorter retired after a lifetime of public service of educating the school children of the State of Texas. At the time of her retirement, McWhorter had designated Holmes as beneficiary of her TRS optional annuity benefit.

On June 25, 1998, McWhorter provided TRS with a designation of beneficiary on TRS Form 11 which appointed Alan Brad Kent and Cassie Elizabeth Kent as joint beneficiaries for "any payments which may be due under the Teacher Retirement System ... following my death...." On August 3, 1998, TRS sent McWhorter a letter stating that, under Section 824.1012 of the Texas Government Code, her husband could not be removed as beneficiary unless either he consented or a court ordered the change. On May 26, 1999, a hearing was held in the County Court at Law of Panola County, Texas, concerning the divorce of McWhorter and Holmes. On July 12, 1999, the trial court entered a decree of divorce. On September 3, 1999, a nunc pro tunc decree of divorce concerning the marriage was entered. The decree stated in pertinent part as follows:

RESPONDENT, LINDA ANN HOLMES, is awarded the following as her sole and separate property, and Petitioner is hereby *divested* of all *right, title, interest,* and *claim in and to such property:* ....

Any and all sums, whether matured or unmatured, accrued or unaccrued, vested or otherwise, together with all increases thereof, the *proceeds therefrom, and any other rights related to Respondent's retirement benefits through the Teacher Retirement System,* and any other profit-sharing plan, retirement plan, pension plan, employee stock option plan, employee savings plan, accrued unpaid bonuses, or other benefit program existing by reason of Respondent's past or present employment.

Additionally, the decree states in pertinent part as follows:

*Execution of Documents.* IT IS ORDERED AND DECREED that Petitioner, TOMMY JOE HOLMES, and Respondent, LINDA ANN HOLMES, shall execute all instruments necessary to effect this decree and that Petitioner and Respondent shall have all appropriate and necessary writs, execution and process, as many and as often as is necessary to accomplish the execution and final disposition of this judgment.

On February 24, 2000, McWhorter's attorney provided TRS with a certified copy of the nunc pro tunc divorce decree. On July 24, 2000, TRS responded to McWhorter's attorney and acknowledged receipt of the divorce decree. However, TRS stated that the decree did not order a change in the beneficiary and suggested language to be included in a modification of the decree. The TRS letter stated that a "court order alone does not change the designation of beneficiary" and that McWhorter would also have to submit a designation of beneficiary on Form 30C. On June 22, 2000, McWhorter executed a last will and testament leaving the residue of her estate to her son.

On January 5, 2002, McWhorter died in Tyler, Texas, at the age of fifty-eight. The Kents received a $10,000.00 lump sum payment pursuant to the Form 11 designation. Beginning in February of 2000, Holmes began receiving annuity payments for the option five annuity.

On October 17, 2002, the Kents filed a petition for enforcement of the divorce decree requesting damages, a constructive trust, and an injunction. Holmes filed an answer, a plea to the jurisdiction, and a counterclaim for a declaratory judgment and attorney's fees. On January 8, 2003, Holmes filed a motion for partial summary judgment alleging that there was no breach of the divorce decree, there was no evidence that the beneficiary had been changed, the annuity could not be assigned, the statute of limitations barred the suit, and the suit exceeded Section 9.007 of the Texas Family Code since it went beyond clarifying and enforcing the divorce decree. *See* TEX. FAM.CODE ANN. § 9.007 (Vernon 1998). On April 29, 2003, the trial court granted Holmes' motion for partial summary judgment, which disposed of all of the Kents' claims. In the order granting the partial summary judgment, the trial court stated that the summary judgment was based on the Kents' failure to present "proof of compliance with applicable statutes governing Teacher Retirement System and Teacher Retirement System's rules and regulation[s]." Holmes' counterclaim was severed, making the judgment final.

**Standard of Review**

When reviewing a summary judgment, we take as true all evidence favorable to the nonmovant and indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Limestone Prods. Distribution, Inc. v. McNamara,* 71 S.W.3d 308, 311 (Tex.2002); *Rhone–Poulenc, Inc. v. Steel,* 997 S.W.2d 217, 223 (Tex.1999).

Summary judgment is proper when the movant establishes that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. TEX.R. CIV. P. 166a(c); *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 676 (Tex.1979); *Baubles & Beads v. Louis Vuitton, S.A.*, 766 S.W.2d 377, 379 (Tex. App.-Texarkana 1989, no writ). The question on appeal is not whether the summary judgment proof raises a fact issue with reference to the essential elements of the movant's cause of action, but whether the summary judgment proof establishes that the movant is entitled to summary judgment as a matter of law. *Gonzalez v. Mission Am. Ins. Co.*, 795 S.W.2d 734, 736 (Tex.1990). Because the movant bears the burden of proof, all conflicts in the evidence are disregarded, evidence favorable to the nonmovant is taken as true, and all doubts as to the genuine issues of material fact are resolved in favor of the nonmovant. *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548–49 (Tex.1985).

## Summary

The Kents' suit rests on two separate theories: 1) that McWhorter changed the beneficiary of the annuity and 2) that Holmes was divested of McWhorter's retirement in the divorce. We affirm the trial court's summary judgment concerning the holding that McWhorter did not change the beneficiary. However, the failure to change the beneficiary does not alter the fact that Holmes was divested of all right, title, and interest to such property and the proceeds therefrom by the divorce judgment. Since the divorce decree divested Holmes of all rights and interests to McWhorter's retirement, any acceptance of payments violates the divorce decree unless McWhorter's intent after the divorce was for Holmes to be the beneficiary. Although Holmes is the designated beneficiary, the divorce decree granted McWhorter both the ownership and beneficiary interest in the annuity payments. Thus, a constructive trust should attach to funds paid from TRS to Holmes unless it is shown that McWhorter intended, after the divorce, to give the annuity to Holmes. A fact issue exists concerning whether McWhorter intended that Holmes receive the annuity. We also determine that the statute of limitations does not bar suit and that any error concerning the lack of authentication of the exhibits was not preserved for review. Last, we consider the points of error concerning the remedies sought by the Kents. The change of ownership and beneficiary interests in the divorce was not an assignment controlled by the nonassignability clause applicable to the retirement funds. The Kents have asserted that equity demands that the contract with TRS be reformed to reflect that the Kents are now the beneficiaries. However, reformation of contract is not an available remedy in the absence of inequitable conduct on the part of TRS. Because a fact issue exists, we reverse and remand the judgment.

## Designation of Beneficiary

■ In their first, sixth, eighth, and ninth points of error, the Kents allege that TRS's construction of the statute is erroneous. The Kents argue that McWhorter's designation of her son and daughter-in-law as joint beneficiaries on TRS Form 11 is a. clear intention of a change in beneficiary sufficient to change the beneficiary under the governing statute. In the alternative, the Kents contend the form indicates a clear intent to remove Holmes as a beneficiary. The Kents argue that the submitted TRS Form 11 at the very least creates a fact issue as to the intention to change the beneficiary.

On June 25, 1998, McWhorter provided TRS with a designation of beneficiary on

TRS Form 11, which appointed Alan Brad Kent and Cassie Elizabeth Kent as joint beneficiaries. The submitted form reads in pertinent part as follows:

PRIMARY BENEFICIARY OR JOINT PRIMARY BENEFICIARIES

I hereby designate the following person(s) as my primary beneficiary(ies) to receive any payments which may be due under the Teacher Retirement System Law of the State of Texas following my death (joint beneficiaries to share alike, with right of survivorship only):

. . . .

When received by the Teacher Retirement System, this form revokes any previous beneficiary designation made by the member on a prescribed Teacher Retirement System form.

This form is the most recent designation of a beneficiary in the record.

The Kents argue that, under the plain language of the form and Section 824.101(d) of the Texas Government Code, this form changed the beneficiary of the annuity. Section 824.101(d) of the Texas Government Code provides as follows:

Unless a contrary intention is clearly indicated by written designation of beneficiary and except as otherwise provided by this section, the most recent designation of beneficiary by a member or annuitant applies to all benefits payable on the death of the member or annuitant.

TEX. GOV'T CODE ANN. § 821.101(d) (Vernon Supp.2004). The Kents argue that TRS's construction would render Section 824.101(d) useless or surplusage. *Cf. Laidlaw Waste Sys. (Dallas), Inc. v. City of Wilmer,* 904 S.W.2d 656, 659 (Tex.1995); *Chevron Corp. v. Redmon,* 745 S.W.2d 314, 316 (Tex.1987). Further, the Kents con-

tend the requirement of specific language requested by TRS that the order state "that the designation of Tommy J. Holmes as the beneficiary . . . be changed . . . ." is an unreasonable construction and inconsistent with the statute.

Holmes contends the divorce decree is not sufficient to order a change in the beneficiary.[1] Section 824.1013 provides:

(a) A retiree receiving an optional retirement annuity under Section 824.204(c)(1), (c)(2), or (c)(5) or Section 824.308(c)(1), (c)(2), or (c)(5) may change the designated beneficiary as provided by this section for the benefits payable after the retiree's death under those sections.

(b) If the beneficiary designated at the time of the retiree's retirement is the spouse or former spouse of the retiree:

(1) the spouse or former spouse must give written, notarized consent to the change; or

(2) a court with jurisdiction over the marriage must have ordered the change.

TEX. GOV'T CODE ANN. § 824.1013 (Vernon Supp.2004). The parties' dispute concerns whether a decree which divests a person of all interest in a retirement plan is sufficient to order a change in beneficiary.

TRS has interpreted the above statute to require a court to specifically order a change in the beneficiary. According to TRS, an order which divests a beneficiary of all interest in the retirement and proceeds thereof is not sufficient to order a change of the beneficiary. TRS contends the beneficiary was never actually changed because Holmes did not give written consent and the court order is insufficient to

---

1. The Attorney General's office has filed an amicus brief on behalf of TRS making a similar contention.

order a change. TRS argues that no change of beneficiary is effective unless it is submitted on the proper form. TRS asserts that this strict interpretation gives consistency and protects the State from litigation.

The Texas Supreme Court has held that " '[a] statute of doubtful meaning that has been construed by the proper administrative officers, when re-enacted without any substantial change in verbiage, will ordinarily receive the same construction.' This rule is only applicable where there has been an affirmative long-standing administrative policy." *Sharp v. House of Lloyd, Inc.*, 815 S.W.2d 245, 248 (Tex.1991) (alteration in original) (quoting *Humble Oil & Ref. Co. v. Calvert*, 414 S.W.2d 172, 180 (Tex.1967)); *see Fleming Foods v. Rylander*, 6 S.W.3d 278, 282 (Tex. 1999). An agency's construction of a statute cannot contradict the statute's plain meaning. *Fleming Foods*, 6 S.W.3d at 282. Further, the agency's construction must also be reasonable and not inconsistent with the statute. *Id.; see Cont'l Cas. Co. v. Downs*, 81 S.W.3d 803, 807 (Tex. 2002).

The Kents contend that TRS's construction of the statute would create an "absurd result," is surplusage, and unreasonable. The Kents' argument fails because the Texas Government Code provides that only one person may be designated as the beneficiary of an optional retirement annu-

ity. While an optional annuity may be able to be calculated based on multiple beneficiaries, the statute limits an option five annuity to a single beneficiary. Section 824.101(c) provides that:

> Only one person may be designated as beneficiary of an optional retirement annuity under Section 824.204(c)(1), (c)(2), or (c)(5), and a designation of beneficiary under any of those options may not be made, changed, or revoked, except as provided by Sections *824.1011, 824.1012, and 824.1013*, after the later of the date on which the retirement system makes the first annuity payment to the retiree or the date the first payment becomes due. For purposes of this section, the term "makes payment" includes the depositing in the mail of a payment warrant or the crediting of an account with payment through electronic funds transfer.[2]

Tex. Gov't Code Ann. § 824.101(c) (Vernon Supp.2004) (emphasis added). McWhorter designated Alan Brad Kent and Cassie Elizabeth Kent as joint beneficiaries on TRS Form 11. Under Section 824.101, McWhorter was only allowed to designate one beneficiary.[3] Because only one person may be appointed the beneficiary of an optional retirement plan, McWhorter failed to change the beneficiary concerning the optional retirement annuity. Her designation of joint beneficiaries could not apply to the optional annuity because the Texas

---

2. Tex. Gov't Code Ann. § 824.101(c) (Vernon Supp.2004). At the time McWhorter submitted the TRS Form 11, the Texas Government Code contained two sections which were both numbered 824.1012 and were subsequently renumbered 824.1012 and 824.1013. *See* Act of May 29, 1997, 75th Leg., R.S., ch. 1416, § 14, 1997 Tex. Gen. Laws 5300, *renumbered by* Act of May 30, 1999, 76th Leg., R.S., ch. 1540, § 9, 1999 Tex. Gen. Laws 5284 (current version at Tex. Gov't Code Ann. § 824.1013 (Vernon Supp.2004)); *see also* Act of May 15, 1997, 75th Leg., R.S., ch. 401, § 1, 1997 Tex.

Gen. Laws 1639–40, *renumbered by* Act of May 30, 1999, 76th Leg., R.S., ch. 1540, § 8, 1999 Tex. Gen. Laws 5284 (current version at Tex. Gov't Code Ann. § 824.1012 (Vernon Supp.2004)). The text of Section 824.101 was amended to account for the renumbering. *See* Act of May 30, 1999, 76th Leg., R.S., ch. 1540, § 6, 1999 Tex. Gen. Laws 5284.

3. The reason is that the annuity is calculated over the lifetime of the beneficiary.

Government Code restricts the designation to a single beneficiary. We find that McWhorter did not fulfill all statutory requirements to change the beneficiary. We overrule the Kents' first point of error.

### Sanderlin Case

▮ When McWhorter and Holmes divorced, he was divested of all rights to her retirement. The Kents contend the trial court erred because Holmes' acceptance of the annuity payments violates the divorce decree. In support of their argument, the Kents cite *Sanderlin v. Sanderlin*, 929 S.W.2d 121 (Tex.App.-San Antonio 1996, writ denied). Holmes argues that *Sanderlin* is distinguishable. Although Holmes is the beneficiary under the statute, he may not ultimately be entitled to the payments. Because the divorce decree divested Holmes of all interest in the retirement, a fact issue exists as to whether Holmes can accept payments on the retirement annuity. Although the statute has been modified and the beneficiary has not been changed, we hold that the reasoning of *Sanderlin* applies in determining who ultimately receives the payments.

In *Sanderlin,* the retiree designated his wife of five months as a beneficiary after the divorce had been filed, but before the divorce decree was final. *Id.* at 122. Thereafter, the parties divorced and the wife was divested of such property. The husband then died. The court specifically noted that "[t]he divorce decree was subsequent to the beneficiary form." *Id.* The San Antonio Court of Appeals held that an acceptance of death benefits by the wife constituted a breach of contract of the divorce settlement, which divested her of any right to the plan. *Id.* at 123.

The *Sanderlin* court appears to have concluded that the divorce decree changed the beneficiary. At that time, Section 824.101(d) provided that "[u]nless a con-

trary intention is clearly indicated by a written designation of beneficiary and *except as otherwise provided by law,* the most recent designation of beneficiary by a member or annuitant applies to all benefits payable on the death of the member or annuitant." Act of May 4, 1989, 71st Leg., R.S., ch. 179, § 1, 1989 Tex. Gen. Laws 665 (emphasis added), *amended by* Act of May 29, 1997, 75th Leg., R.S., ch. 1416, § 12, 1997 Tex. Gen. Laws 5300. The *Sanderlin* court concluded that the divorce settlement fell within the "except as otherwise provided by law" clause and that the wife was no longer the beneficiary. *Sanderlin,* 929 S.W.2d at 123.

▮ Retirement benefits earned by the employee spouse during marriage are community property and subject to division on divorce. *Stavinoha v. Stavinoha,* 126 S.W.3d 604, 610 (Tex.App.-Houston [14th Dist.] 2004, no pet.). Holmes argues that the divorce only divested him of ownership interest in the retirement and that he could retain his beneficiary interest. In essence, Holmes argues, even though the divorce decree divests him of all rights to the retirement benefits and proceeds therefrom, he is entitled to receive the annuity. A divorce decree is construed by the rules relating to construction of a judgment. *Acosta v. Acosta,* 836 S.W.2d 652, 654 (Tex.App.-El Paso 1992, writ denied). According to the rules relating to construction of judgments, the effect of a divorce decree should be declared "in light of the literal meaning of the language used." *Id.* (quoting *Lohse v. Cheatham,* 705 S.W.2d 721, 726 (Tex.App.-San Antonio 1986, writ dism'd)). Under Texas common law, the beneficial interest of an insurance policy may be terminated by the divorce decree where it clearly appears from the decree that it was intended to deprive the spouse of the right to take as beneficiary under an

insurance policy on the life of the other.[4] Courts distinguish ownership rights from beneficiary rights, but a divorce decree which divests of all interests prevents a spouse from retaining his or her beneficiary rights. *Gillespie v. Moore*, 635 S.W.2d 927, 928 (Tex.App.-Amarillo 1982, writ ref'd n.r.e.); *see Nichols v. Nichols*, 727 S.W.2d 303, 305 (Tex.App.-Beaumont 1987, writ ref'd n.r.e.) (failure to divest of beneficiary interest allows ex-spouse to recover). In *Conn v. Trow*, this Court held that a divorce decree which granted a former spouse " '[a]ny and all proceeds from Respondent's retirement plan" prevented his ex-spouse from collecting death benefits as the designated beneficiary. 715 S.W.2d 152, 153 (Tex.App.-Texarkana 1986, no writ). Thus, the divorce decree which divested Holmes of "all right, title, interest and claim" to McWhorter's TRS retirement and "proceeds therefrom" divested Holmes of his beneficiary interest as well as his ownership interest.

Approximately twenty-seven months elapsed from the time of the divorce and McWhorter's death. Holmes argues that the failure by McWhorter to change the beneficiary as required by statute shows she intended for him to receive the annuity at her death. We have found that the divorce decree divested him of all interest and granted her all interest, which would include the right to designate the beneficiary. Since McWhorter did not change the beneficiary as required by law after the divorce, we agree that a fact issue exists concerning whether McWhorter intended to give the annuity benefits to Holmes. Viewing the evidence in a light most favorable to the nonmovant, more than a scintilla of evidence exists that McWhorter intended for the Kents to receive her retirement benefits. McWhorter was awarded all rights and title to her retirement benefits, including the "proceeds therefrom," in the divorce decree. While as sole owner of the retirement benefits McWhorter could have chosen to give

**4.** *Novotny v. Wittner*, 731 S.W.2d 103, 105 (Tex.App.-Houston [14th Dist.] 1987, writ ref'd n.r.e.); *Gillespie v. Moore*, 635 S.W.2d 927, 928 (Tex.App.-Amarillo 1982, writ ref'd n.r.e.); *see Seaman v. Seaman*, 756 S.W.2d 56, 58 (Tex.App.-Texarkana 1988, no writ) (divorce granting wife all rights and interest in husband's policy divested husband of the right to change beneficiary). *But see Parker v. Parker*, 683 S.W.2d 889, 890–91 (Tex.App.-Fort Worth 1985, writ ref'd) (if divorce decree does not specifically divest and the beneficiary designation is not changed, the ex-spouse is entitled to the benefits). We note that the effect of a divorce on insurance beneficiaries and retirement plans is now governed by statute. *See* Tex. Fam.Code Ann. §§ 9.301, 9.302 (Vernon 1998). *See Copeland v. Alsobrook*, 3 S.W.3d 598, 601 (Tex.App.-San Antonio 1999, pet. denied). However, Section 9.302 states that it does not apply to "a beneficial interest in a retirement benefit or other financial plan of a public retirement system as defined by Section 802.001, Government Code." Tex. Fam Code Ann. § 9.302(e) (Vernon 1998). Further, in most circumstances, life insurance

proceeds are governed by ERISA if they are offered in connection with a retirement plan governed by ERISA. *See Manning v. Hayes*, 212 F.3d 866, 870 (5th Cir.2000). We also note that the effect of divorce on retirement plans which were pre-empted by ERISA are governed by federal common law. *See Keen v. Weaver*, 121 S.W.3d 721, 727 (Tex.2003); *Barnett v. Barnett*, 67 S.W.3d 107, 119–20 (Tex.2001); *cf. Emmens v. Johnson*, 923 S.W.2d 705, 707 (Tex.App.-Houston [1st Dist.] 1996, writ denied) (profit sharing plan). Congress specifically excluded governmental employee benefit plans from ERISA. 29 U.S.C.A. § 1003(b)(1) (West 1999). ERISA defines a governmental plan as a plan "established or maintained for its employees ... by the government of [the State of Texas] or political subdivision thereof, or by any agency or instrumentality of ... the foregoing." 29 U.S.C.A. § 1002(32) (West 1999). This Court has previously held that TRS meets the definition of a governmental plan and is not subject to Title I of ERISA. *In re Marriage of Mc-Donald*, 118 S.W.3d 829, 831 (Tex.App.-Texarkana 2003, pet. denied).

the annuity to Holmes, McWhorter provided TRS with a designation of beneficiary on TRS Form 11, which appointed Alan Brad Kent and Cassie Elizabeth Kent as joint beneficiaries for "any payments which may be due under the Teacher Retirement System ... following my death...." The TRS Form 11 combined with the divorce decree is more than a scintilla of evidence that McWhorter did not intend to give the retirement annuity to Holmes. At a minimum, a genuine issue of material fact exists as to whether McWhorter intended to give the annuity to Holmes or whether she intended the Kents to receive the proceeds of the annuity. If McWhorter did not intend to give the annuity to Holmes after the divorce decree, Holmes is barred from accepting the annuity payments by the divorce decree.

Holmes makes five arguments in support of his contention that *Sanderlin* is distinguishable. Holmes contends the reasoning of *Sanderlin* should not apply because 1) of the lack of a settlement agreement governing this divorce, 2) McWhorter intended to retain Holmes as the beneficiary, 3) *Sanderlin* has never been cited for any issue relevant to this case, 4) of the subsequent amendment of Section 824.101, and 5) the *Sanderlin* approach is not practical. We have already addressed Holmes' second argument and held that, at a minimum, a fact issue exists as to whether McWhorter intended that Holmes receive the annuity.

■ In his first distinction, Holmes contends the lack of a settlement agreement renders the reasoning of *Sanderlin* inapplicable. A breach of a settlement agreement should not be treated any differently than a breach of a divorce decree. *See Ex parte Gorena*, 595 S.W.2d 841, 844 (Tex.1979). "The fact that a judgment is rendered by consent gives it neither less nor greater force or effect than it would have had it been rendered after protracted litigation, except to the extent that the consent excuses error and operates to end all controversy between the parties." *Gorena*, 595 S.W.2d at 844; *Wagner v. Warnasch*, 156 Tex. 334, 295 S.W.2d 890, 893 (1956). While Holmes cannot be said to have waived any right by virtue of a settlement agreement, the divorce decree prevents him from accepting the benefits.

■ The third distinction argued by Holmes is that *Sanderlin* has not been cited by any other case that is relevant to any issue in this case. The mere fact that a case has not been cited for a particular issue does not invalidate its persuasiveness.

Holmes' fourth argument is that the legislative amendment renders *Sanderlin* "obsolete and moot." After *Sanderlin* was decided, the Texas Legislature amended Section 824.101(d) to replace the "except as otherwise provided by law" with the clause "except as provided by Sections 824.1011 and 824.1012." *See* Act of May 29, 1997, 75th Leg., R.S., ch. 1416, § 12, 1997 Tex. Gen. Laws 5300, *amended by* Act of May 30, 1999, 76th Leg., R.S., ch. 1540, § 6, 1999 Tex. Gen. Laws 5284. In addition, the Texas Legislature added a subsection (g) to 824.101 which provides:

(g) Receipt by the retirement system of a certified copy of a divorce decree between a member or annuitant and a designated beneficiary revokes any designation of the former spouse as beneficiary of any death benefits payable under Subchapter E or F of this chapter that was effective before the date of divorce, if the decree is received by the retirement system before the payment of any part of the death benefit to any beneficiary.

*Id.* The Legislature also added Sections 824.1012 and 824.1013. *Id.* Holmes con-

tends these amendments solve the lump sum benefit issue in *Sanderlin* and provide for the change of beneficiary of an optional annuity. This argument fails, however, because Holmes was divested of all rights under the retirement plan and, by accepting the retirement benefits, Holmes is breaching the divorce decree. While the beneficiary can no longer be changed as occurred in *Sanderlin,* the relative rights of McWhorter and Holmes are controlled by the divorce judgment.

Holmes makes a final argument that the approach argued by the Kents is not practical. Holmes contends that TRS will not honor any change in the beneficiary, the Internal Revenue Service will continue to tax Holmes for the benefit, and Holmes will have a cause of action against the estate for the taxes. Although there may be practical difficulties, we must honor the divorce judgment. We sustain the Kents' third point of error.

## Statute of Limitations

In their second point of error, the Kents challenge the applicability of Section 9.003(b) of the Texas Family Code to the suit in question. The Kents contend this limitations period does not apply because this is not a suit to compel division of property. In the alternative, the Kents argue that the property accrued within two years of filing the suit.

Orders for enforcement and clarification may more precisely specify the manner of carrying out the property division previously ordered so long as the substantive division of the property is not altered. *McPherren v. McPherren,* 967 S.W.2d 485, 490 (Tex.App.-El Paso 1998, no pet.). Such orders must be made on a finding, express or implied, that the original form of the division of property lacks sufficient specificity to be enforced by contempt. *Id.* The Texas Family Code ex-

pressly prohibits a post-judgment modification of a division of property contained in a decree of divorce. *Kadlecek v. Kadlecek,* 93 S.W.3d 903, 909 (Tex.App.-Austin 2002, no pet.). Retirement benefits earned by the employee spouse during marriage are community property and subject to division on divorce. *Stavinoha,* 126 S.W.3d at 610.

The Kents contend Section 9.003 does not apply because this is not a suit for division of property, but rather a suit for enforcement of a division of property. The Kents cite *Jenkins v. Jenkins,* 991 S.W.2d 440, 445 (Tex.App.-Fort Worth 1999, pet. denied), for the proposition that Section 9.003 does not apply. In *Jenkins,* the Fort Worth Court of Appeals held that a suit to compel payment of alimony payments was not a suit "to compel a division of property via his motion to enforce." *Id.* This case is distinguishable from *Jenkins* because there had been a division of property. *Jenkins* stands for the proposition that an agreement incidental to a divorce which awards alimony is not a division of property. *See id.* The motion to enforce involved a "specific monetary award in the AID to judgment, rather than a division of property,...." *Id.* In our case, the property had been divided in the previous divorce decree and was not a specific monetary award similar to alimony. The division was made at the time of the divorce decree and a judgment was entered, which divested Holmes of any rights as to the property at issue. This suit is a motion to enforce the previous division, not a motion to enforce a monetary award such as alimony.

The plain language of Section 9.003 applies to suits for enforcement of a decree which divided the property in issue. TEX. FAM.CODE ANN. § 9.003 (Vernon 1998). Section 9.003 does not apply to a suit for division of property which was not divided on divorce. TEX. FAM.CODE ANN. § 9.004

(Vernon 1998). In construing the predecessor to Section 9.003, the Amarillo Court of Appeals held that military retirement benefits matured on payment of each installment. *In re Marriage of Reinauer,* 946 S.W.2d 853, 860 (Tex.App.-Amarillo 1997, pet. denied). "In short, limitations would accrue as to each installment." *Id.; see Gonzales v. Gonzales,* 728 S.W.2d 446, 448 (Tex.App.-San Antonio 1987, no writ). Therefore, the property in dispute here would not mature or accrue until TRS made a payment to Holmes, and the limitations would accrue as to each installment.

The first installment paid by TRS to Holmes began in February 2000. The Kents filed suit to enforce the divorce decree October 17, 2002. Section 9.003 does not bar recovery of any of the installments paid by TRS to Holmes from November 2000 to the present. We sustain the Kents' second point of error as to any payments from TRS to Holmes from November 2000.

### Authentication of Exhibits

■ The Kents' fifth point of error contends the trial court erred in admitting exhibits which were not properly authenticated. *See Banowsky v. State Farm Mut. Auto. Ins. Co.,* 876 S.W.2d 509, 513 (Tex. App.-Amarillo 1994, no writ), *superseded by statute on other grounds as stated in Trusty v. Strayhorn,* 87 S.W.3d 756, 759 (Tex.App.-Texarkana 2002, no pet.). Holmes argues that the Kents failed to object when the evidence was admitted at the December 5, 2002, hearing.

When the exhibits were admitted at the hearing December 5, 2002, the Kents' attorney stated that he had "no objection." However, at the summary judgment hearing Feburary 27, 2003, the Kents' attorney objected to the lack of a business records affidavit authenticating the exhibits.

Holmes' attorney responded that the exhibits had been admitted at the prior hearing, and the trial court ruled that "[t]hey have been previously admitted."

To preserve a complaint for our review, a party must have presented to the trial court a timely request, objection, or motion that states the specific grounds for the desired ruling, if they are not apparent from the context of the request, objection, or motion. *See* Tex.R.App. P. 33.1(a); *see also* Tex.R. Evid. 103(a)(1). If a party fails to do this, error is not preserved, and the complaint is waived. *See Bushell v. Dean,* 803 S.W.2d 711, 712 (Tex.1991). The failure to properly object to the defects in the authentication of exhibits in support of a motion for summary judgment or response waives any error. *Watts v. Hermann Hosp.,* 962 S.W.2d 102, 105 (Tex.App.-Houston [1st Dist.] 1997, no pet.). We overrule the Kents' fifth point of error.

### Nonassignability of Retirement Benefits

■ In their seventh point of error, the Kents contend the nonassignability provisions concerning the benefits do not apply to spouses or prevent partition of property in a divorce proceeding. Section 821.005 provides that:

All retirement allowances, annuities, refunded contributions, optional benefits, money in the various retirement system accounts, and rights accrued or accruing under this subtitle to any person are exempt from garnishment, attachment, state and municipal taxation, sale, levy, and any other process, and are unassignable.

Tex. Gov't Code Ann. § 821.005 (Vernon 1994). Several Texas courts have held that retirement benefits can be divided in a divorce proceeding despite the exemption provision applicable there. *See Irving Fireman's Relief & Retirement Fund v.*

*Sears*, 803 S.W.2d 747, 749 (Tex.App.-Dallas 1990, no writ); *Cain v. Cain*, 746 S.W.2d 861, 863–64 (Tex.App.-El Paso 1988, writ denied); *Morgan v. Horton*, 675 S.W.2d 602, 603 (Tex.App.-Dallas 1984, no writ); *Collida v. Collida*, 546 S.W.2d 708, 710 (Tex.Civ.App.-Beaumont 1977, writ dism'd).

These courts hold that the intended purpose of the provision is to protect the interests in the retirement fund from creditors and assignees of the member, and found one spouse to be neither a creditor nor an assignee of the other when, in a divorce proceeding, a division of community benefits was sought. *Morgan*, 675 S.W.2d at 603; *Collida*, 546 S.W.2d at 710. The Dallas Court of Appeals has held that the subsequent passage of a nonassignability clause did not modify the previous holding that the nonassignability did not apply to divisions due to divorce. *Sears*, 803 S.W.2d at 749. We agree. Thus, the trial court can impose a constructive trust on funds received by Holmes as annuity payments in favor of the heirs under the estate until Holmes' death. *Cf. Marsh v. Wallace*, 924 S.W.2d 423, 424 n. 1 (Tex. App.-Austin 1996, no writ). We sustain the Kents' seventh point of error.

## Reformation of Contract

■ In their fourth point of error, the Kents argue they have sufficient standing as third-party beneficiaries for the court to reform the contract between the estate and TRS to reflect the change in beneficiaries. However, reformation of contract is not a remedy generally available for a unilateral mistake.

■ A third-party beneficiary does have standing to seek reformation of a contract. *Merrimack Mut. Fire Ins. Co. v. Allied Fairbanks Bank*, 678 S.W.2d 574, 577 (Tex.App.-Houston [14th Dist.] 1984, writ ref'd n.r.e.). The general rule, though, is that a mistake that justifies relief must be a mutual, not a unilateral, mistake. *Cigna Ins. Co. v. Rubalcada*, 960 S.W.2d 408, 412 (Tex.App.-Houston [1st Dist.] 1998, no pet.). In certain circumstances, the principles of equity may permit relief for a unilateral mistake. *See id.; James T. Taylor & Son, Inc. v. Arlington Indep. Sch. Dist.*, 160 Tex. 617, 620, 335 S.W.2d 371, 373 (1960). However, in the case of a unilateral mistake, the reformation is not generally available as a remedy, although the unilateral mistake may be grounds for rescission.[5] The cases cited by the Kents concern rescission of a contract rather than reformation. *See Cigna*

---

5. *Oldaker v. Travelers Ins. Co.*, 497 S.W.2d 402, 403 (Tex.Civ.App.-El Paso 1973, no writ); *Ward v. Gohlke*, 279 S.W.2d 422, 427 (Tex. Civ.App.-San Antonio 1955, writ ref'd); *see Boyett v. Boyett*, 799 S.W.2d 360, 363 (Tex. App.-Houston [14th Dist.] 1990, no writ). We note that one of the cases cited by the Texas Supreme Court in *James T. Taylor & Son, Inc.*, involved reformation of a contract. *James T. Taylor & Son, Inc. v. Arlington Indep. Sch. Dist.*, 160 Tex. 617, 335 S.W.2d 371, 373 (1960). However, this case involved inequitable conduct by the other party and reasoned that knowledge of the other party's mistake is equivalent to a mutual mistake. *See Warren v. Osborne*, 154 S.W.2d 944, 945–46 (Tex.Civ. App.-Texarkana 1941, writ ref'd w.o.m.). Reformation based on a unilateral mistake may be available when there are allegations of fraud or other inequitable conduct by the other party. *See Davis v. Grammer*, 750 S.W.2d 766, 768 (Tex.1988) (the other party's awareness of the mistake was equivalent to mutual mistake); *Fireman's Fund Indem. Co. v. Boyle Gen. Tire Co.*, 392 S.W.2d 352, 354–55 (Tex.1965) (negligent misrepresentation); *Hill v. Spencer & Son, Inc.*, 973 S.W.2d 772, 775 (Tex.App.-Texarkana 1998, no pet.) (fraud or inequitable conduct); *Hamberlin v. Longview Bank & Trust Co.*, 770 S.W.2d 12, 14 (Tex.App.-Texarkana 1989, writ denied) (the other party's awareness of the mistake and failure to mention constituted inequitable conduct). There are no allegations of inequitable conduct on the part of TRS.

*Ins. Co.,* 960 S.W.2d at 412; *James T. Taylor & Son, Inc.,* 335 S.W.2d at 373. Reformation of the contract is not a remedy available to the Kents based on the alleged unilateral mistake. Further, TRS is not a party to this lawsuit. For these reasons, we overrule the Kents' fourth point of error.

### Conclusion

Indulging all inferences from the summary judgment evidence in favor of the nonmovant, we hold that a fact issue exists as to whether McWhorter intended for Holmes to collect as a beneficiary of the optional annuity. If McWhorter did not intend for Holmes to collect as a beneficiary, the divorce decree prevents Holmes from retaining the payments from TRS. Since Holmes is designated as the beneficiary, and a change of beneficiary was not properly completed, TRS is contractually bound to pay Holmes the annuity. However, due to the divorce judgment, Holmes is not entitled to retain such payments unless the trial court determines McWhorter intended, after the divorce, to give Holmes the annuity benefits. The statute of limitations does not bar suit on payments made to Holmes beginning November 2000, and any error concerning the lack of authentication of the exhibits was not preserved for review. The change of ownership and beneficiary interests in the divorce was not an assignment controlled by the nonassignability clause applicable to the retirement funds. Reformation of contract is not an available remedy.

We affirm the trial court's holding that the beneficiary of the annuity was not changed. Because a genuine issue of material fact exists concerning whether Holmes is entitled to the payments, we reverse the judgment and remand the case to the trial court for a trial on the merits. If the court determines that McWhorter did not intend to give Holmes the annuity benefits after the divorce, it should impose a constructive trust on all proceeds of the TRS retirement benefits payable to Holmes from November 2000 in favor of the estate of McWhorter.