**Tommy Joe HOLMES, Petitioner,**

v.

**Alan Brad KENT, Individually and as Independent Executor of the Estate of Linda Ann McWhorter, Deceased, and Cassie Elizabeth Kent, Respondents.**

**No. 04–0729.**

Supreme Court of Texas.

April 20, 2007.

Robert Underwood, Robert Collin Underwood, Carthage, James A. Vaught, McCullar & Vaught, P.C., Austin, for petitioner.

Steven M. Dowd, Law Offices of Steven M. Dowd, J. Scott Morris, J. Scott Morris, P.C., Austin, for respondents.

Greg Abbott, Attorney General of Texas, Barbara Bryant Deane, Assistant Attorney General, Harrell Glenn Hall III, Barry Ross McBee, Edward D. Burbach, George C. Noelke, Office of the Attorney General of Texas, Austin, for Amicus Curiae Teacher Retirement System of Texas.

PER CURIAM.

Petitioner Tommy Joe Holmes claims that he is entitled to payments from an optional annuity elected by his deceased ex-wife, Linda Ann McWhorter, as part of her teacher retirement benefits. Her son Alan Brad Kent, who is the executor of her estate and only heir, joined by his ex-wife Cassie Elizabeth Kent[1] as respondents, disagree. They argue, first, that McWhorter's designation of them as beneficiaries of her other retirement benefits covered the optional annuity as well or at least showed her intent that they receive the annuity, and second, that Holmes and McWhorter's divorce decree divested him of all interest in her retirement benefits. The trial court granted Holmes summary judgment. The court of appeals rejected the Kents' first argument but agreed with the second, thus concluding that while Holmes was entitled to receive the annuity payments because his designation as beneficiary was never changed, after the divorce he had no right to retain the payments unless McWhorter intended for him to have them.[2] If on remand it were shown that she had no such intention, a constructive trust should be imposed on the payments in favor of McWhorter's estate.[3] Holmes petitioned this Court for review. The Teacher Retirement System of Texas has filed an amicus curiae brief arguing that the court of appeals' decision will adversely affect thousands of TRS retirees and beneficiaries. We reverse and render judgment for Holmes.

TRS allows a retiree to elect, instead of a standard service retirement annuity, an optional annuity that provides reduced payments to the retiree during her life and, at death, continued payments to and throughout the life of a designated beneficiary.[4] Under this option, if the beneficiary does not survive the retiree, the retiree's payments increase to those of a

1. The Kents, who were still married when McWhorter died, divorced during this litigation.

2. 139 S.W.3d 120, 133 (Tex.App.-Texarkana 2004).

3. *Id.*

4. Tex. Gov't Code § 824.204(a)-(c). These provisions, as pertinent to the annuity chosen by McWhorter, state:

"(a) Instead of the standard service retirement annuity ..., a retiring member may elect to receive an optional service retirement annuity ... under this section. An election to receive an optional service retirement annuity must be filed with the board of trustees not later than the effective date of retirement.

"(b) An optional service retirement annuity is an annuity payable throughout the life of the retiree and is actuarially reduced from the annuity otherwise payable under this subtitle to its actuarial equivalent under the option selected under Subsection (c).

"(c) An eligible member may select one of the following options, which provide that: ...

"(5) after the retiree's death, three-fourths of the reduced annuity is payable to and throughout the life of the person nominated by the retiree's written designation filed prior to retirement."

standard annuity, but only prospectively.[5] If the beneficiary survives the retiree, payments cease when the beneficiary dies.[6] Only one beneficiary can be designated, and changing the designation is restricted,[7] since the value of the optional annuity, and hence the cost to TRS, depend on the beneficiary's longevity. Statutory amendments in 1997 and 2001 allow a retiree who has designated a spouse as beneficiary a change or revocation if the spouse files a notarized consent or if a court in a divorce proceeding approves or orders the change or revocation.[8] TRS is

5. *Id.* § 824.204(d) ("If a person who is nominated by a retiree in the written designation under Section 824.101 predeceases the retiree, the reduced annuity of a retiree who has elected an optional service retirement annuity under Subsection (c)(1), (c)(2), or (c)(5) shall be increased to the standard service retirement annuity that the retiree would otherwise be entitled to receive if the retiree had not selected that annuity option. . . .").

6. *Id.* § 824.204(c)(5).

7. *Id.* § 824.101. This section provides:

"(a) Except as provided by Subsection (c), any member or annuitant may, on a form prescribed by and filed with the retirement system, designate one or more beneficiaries to receive benefits payable by the retirement system on the death of the member or annuitant.

"(b) Except as provided by Subsection (c), a member or annuitant may change or revoke a designation of beneficiary in the same manner as the original designation was made.

"(c) Only one person may be designated as beneficiary of an optional retirement annuity under Section 824.204(c)(1), (c)(2), or (c)(5), and a designation of beneficiary under any of those options may not be made, changed, or revoked, except as provided by Sections 824.1011, 824.1012, and 824.1013, after the later of the date on which the retirement system makes the first annuity payment to the retiree or the date the first payment becomes due. For purposes of this section, the term 'makes payment' includes the depositing in the mail of a payment warrant or the crediting of an account with payment through electronic funds transfer.

"(d) Unless a contrary intention is clearly indicated by a written designation of beneficiary and except as otherwise provided by this section, the most recent designation of beneficiary by a member or annuitant applies to all benefits payable on the death of the member or annuitant.

"(e) The retirement system by rule may provide for the designation of alternate bene-

ficiaries and may adopt other rules to administer this section.

"(f) A beneficiary designation, change in beneficiary, or revocation of beneficiary is not effective unless it is authorized by this subchapter. Except as provided by Subsection (g), any authorized beneficiary designation, change in beneficiary, or revocation of beneficiary, including any modification ordered by a court or contemplated in a trust or testamentary document, must be executed by the member or annuitant in a form prescribed by the retirement system and must be received by the retirement system before the member's or annuitant's death or, for a beneficiary named to receive continued optional service or disability retirement payments, not later than the deadline established elsewhere in this subtitle.

"(g) Receipt by the retirement system of a certified copy of a divorce decree between a member or annuitant and a designated beneficiary revokes any designation of the former spouse as beneficiary of any death benefits payable under Subchapter E or F of this chapter that was effective before the date of divorce, if the decree is received by the retirement system before the payment of any part of the death benefit to any beneficiary."

8. Act of May 15, 1997, 75th Leg., R.S., ch. 401, § 1, 1997 Tex. Gen. Laws 1639, 1639–40 (providing for revocation following divorce), and Act of May 29, 1997, 75th Leg., R.S., ch. 1416, § 14, 1997 Tex. Gen. Laws 5297, 5300 (providing for change), *both amended by* Act of May 30, 1999, 76th Leg., R.S., ch. 1540, §§ 8–9, 1999 Tex. Gen. Laws 5282, 5284; Act of May 27, 2001, 77th Leg., R.S., ch. 1229, § 8, 2001 Tex. Gen. Laws 2811, 2813 (providing for revocation by consent). Current versions of these sections are found at TEX. GOV'T CODE §§ 824.1012–.1013, which state in pertinent part:

"**§ 824.1012. Revocation of Beneficiary Designation for Certain Retirement Benefit Options**

authorized to prescribe the form the retiree must use.[9] If the designation is revoked, the retiree receives the higher payments of a standard annuity going forward,[10] as if the beneficiary had predeceased the retiree. If the designation is changed, the new beneficiary receives payments for the shorter of his life or the original beneficiary's life expectancy at the time the retiree retired.[11] Thus, a change or revocation should not (statistically) increase and may actually decrease the cost to TRS of the retiree's original election of the optional annuity.

TRS reads the statutory provisions strictly to require that a retiree submit the change or revocation to TRS on a pre-scribed form and that the divorce court's approval or order specifically direct the change or revocation; a divorce decree's general award of retirement benefits to the retiree does not, in TRS's view, satisfy the requirements. According to TRS, these statutory requirements "protect the trust fund from the claims of multiple beneficiaries that arise when there is uncertainty regarding the beneficiary of the benefits and the resulting costs of litigation." They also protect retirees and beneficiaries, TRS argues, by providing a clear, certain system for assigning retirement benefits.

When McWhorter retired in May 1997 at age 54 after 33 years of teaching, she

---

"(a) As an exception to Section 824.101(c), a retiree who selected an optional service retirement annuity under Section 824.204(c)(1), (c)(2), or (c)(5) ... may revoke the designation of the beneficiary to receive the annuity on the death of the retiree, if a court in a divorce proceeding involving the retiree and beneficiary approves or orders the revocation in the divorce decree or acceptance of a property settlement or if the beneficiary is the spouse, a former spouse, or an adult child of the retiree and signs a notarized consent to the revocation. The revocation takes effect when the retirement system receives it.

"(b) A revocation described by Subsection (a) cancels the optional annuity selection made by the retiree, effective with the beginning of payments of the annuity as recomputed under this subsection. The retiree is entitled to receive payments of a standard service or disability retirement annuity, as applicable, reduced for early retirement, if applicable, beginning with the payment for the month after the month in which the retirement system receives the notice of revocation and ending on the death of the retiree.

"(c) The retirement system by rule may establish requirements for forms, documentation, and procedures necessary for the administration of this section.

"§ 824.1013. Change of Beneficiary After Retirement

"(a) A retiree receiving an optional retirement annuity under Section 824.204(c)(1),

(c)(2), or (c)(5) ... may change the designated beneficiary as provided by this section for the benefits payable after the retiree's death under those sections.

"(b) If the beneficiary designated at the time of the retiree's retirement is the spouse or former spouse of the retiree:

"(1) the spouse or former spouse must give written, notarized consent to the change; or

"(2) a court with jurisdiction over the marriage must have ordered the change.

"(c) A beneficiary designated under this section is entitled on the retiree's death to receive monthly payments of the survivor's portion of the retiree's optional retirement annuity for the shorter of:

"(1) the remainder of the life expectancy of the beneficiary designated as of the effective date of the retiree's retirement; or

"(2) the remainder of the new beneficiary's life.

"(d) A retiree may not change a beneficiary under this section after retirement if the retiree has previously changed or designated after retirement a beneficiary for optional retirement annuity payments under this subtitle."

9. *Id.* §§ 824.101(f), 824.1012(c).

10. *Id.* § 824.1012(b).

11. *Id.* § 824.1013(c).

elected an "option 5" annuity [12] and designated Holmes as the beneficiary. The TRS form she signed correctly explained that she could not name joint primary beneficiaries of this optional annuity and that she would receive

> [a] reduced annuity payable throughout my life with the provision that upon my death three-fourths (3/4) of the reduced annuity shall be continued throughout the life of and paid to the person designated hereupon as primary beneficiary. If my primary beneficiary designated hereupon predeceases me, my annuity payment will increase to the standard annuity amount.[13]

McWhorter was also entitled to a $10,000 lump-sum payment at her death.

A year later, while going through a divorce, McWhorter signed a TRS form stating:

> I hereby designate the following person(s) as my primary beneficiary(ies) to receive any payments which may be due under the Teacher Retirement System Law of the State of Texas following my death (joint beneficiaries to share alike, with right of survivorship only): Alan Brad Kent . . . [and] Cassie Elizabeth Kent.

The form stated that "[w]hen received by the Teacher Retirement System, this form revokes any previous beneficiary designation made by the member on a prescribed Teacher Retirement form." Nevertheless, McWhorter's submission of the form did not meet the statutory requirements for a change in the optional annuity beneficiary because it designated two people, not one, and it was not accompanied by Holmes' notarized consent or a divorce decree ordering a change.[14] TRS notified McWhorter by letter that it had accepted the change for the $10,000 death benefits but explained that to change the beneficiary of the optional annuity, she would be required to submit the appropriate form, which TRS enclosed, and submit it with either Holmes's notarized consent or a "[c]ertified copy of a Court Order from the court with jurisdiction over the marriage ordering the change." The letter added that by statute

> the new beneficiary is entitled to receive monthly payments for the SHORTER of EITHER the remainder of the life expectancy of the original beneficiary designated at retirement, OR the remainder of the new beneficiary's life.

Another year passed, and McWhorter and Holmes's divorce became final. The decree awarded McWhorter

> [a]ny and all sums, whether matured or unmatured, accrued or unaccrued, vested or otherwise, together with all increases thereof, the proceeds therefrom, and any other rights related to [McWhorter's] retirement benefits through the Teacher Retirement System, and any other profit-sharing plan, retirement plan, pension plan, employee stock option plan, employee savings plan, accrued unpaid bonuses, or other benefit program existing by reason of [McWhorter's] past or present employment.

The decree also "divested [Holmes] of all right, title, interest, and claim in and to such property" and required that he "execute all instruments necessary to effect this decree."

McWhorter's attorney submitted the divorce decree to TRS and requested information concerning "the current status of [McWhorter's] account and all available

---

12. *See id.* § 824.204(c)(5).

13. *See id.*

14. *Id.* §§ 824.101(c), 824.1013(b).

options which she might have with respect to payment of her retirement." TRS responded in a five-page letter, explaining in detail what it had on file for McWhorter, the requirements for changing or revoking an optional annuity beneficiary, and the effects of each. The letter advised McWhorter that TRS would not accept the divorce decree as a basis for changing or revoking the beneficiary because it did not clearly order the change or revocation. The letter suggested that it might be possible for McWhorter to have the decree clarified and set out decretal language it would accept. Alternatively, the letter explained that McWhorter could submit a notarized consent by her former spouse. The letter emphasized that McWhorter would also be required to use prescribed forms, and it enclosed forms for revoking or changing the beneficiary and for a former spouse's notarized consent. McWhorter never complied with TRS's instructions. A little over a year later, she died.

McWhorter's will left everything to her son Alan. In accordance with the beneficiary designations on file, TRS made a $10,000 lump-sum payment to the Kents and began making optional annuity payments to Holmes of $1,617 per month. The Kents sued Holmes for an order clarifying and enforcing the divorce decree, compelling him to execute whatever instruments TRS required to transfer annuity payments to the Kents, imposing a constructive trust on payments he received, and enjoining him from accepting future payments. The trial court granted summary judgment for Holmes. The court of appeals held that McWhorter's designation of Holmes as beneficiary of the optional annuity had not been changed because

McWhorter did not fulfill the statutory requirements.[15] TRS was therefore required to make annuity payments to Holmes.[16] But the court also held that the divorce decree divested Holmes of any right to the annuity payments, and that if McWhorter did not intend to give Holmes the payments notwithstanding the decree, her estate was entitled to have a constructive trust in its favor imposed on the payments.[17] The court remanded the case to ascertain McWhorter's intentions.[18]

The Kents do not claim that McWhorter revoked her designation of Holmes as beneficiary of the optional annuity so that her estate would be entitled to increased payments to the level of a standard annuity during her life. We agree with the court of appeals that the original beneficiary designation was never changed. The statutory provisions are very clear. Only one person may be designated beneficiary of an optional annuity. If the person is the retiree's spouse or former spouse, the designation may be changed only as provided by statute: that is, only if the spouse or former spouse signs a notarized consent, or if the divorce decree orders the change. The retiree must also use a form prescribed by TRS. McWhorter never submitted the proper form or Holmes' notarized consent, and the divorce decree did not name a new beneficiary.

We disagree with the court of appeals that a constructive trust in favor of the Kents, or either of them, can be imposed on the payments Holmes receives. Absent a valid designation as the one beneficiary of the optional annuity, Alan's only claim to the payments is under his mother's will, and Cassie has no claim at all. The di-

---

**15.** 139 S.W.3d at 126–27.

**16.** *Id.* at 133.

**17.** *Id.* at 124.

**18.** *Id.*

vorce decree awarded McWhorter all rights in her TRS benefits, divested Holmes of any rights, and required that he execute all papers necessary to carry out the decree. The decree thus denied Holmes any part of McWhorter's benefits as his share of the community estate.

■ In effect, Alan argues that because the divorce decree deprived Holmes of any right to McWhorter's retirement benefits, the payments under the optional annuity should belong to her estate and to him as its beneficiary, and a constructive trust should be imposed to achieve this result. There are three problems with this argument. First, it circumvents the statutory requirements for changing a TRS beneficiary.[19] Second, it alters TRS's statutory obligation. Alan claims that he is entitled to the payments TRS is obligated to make to Holmes for the rest of Holmes's life, but if McWhorter had replaced Holmes with Alan as beneficiary, TRS would owe payments only for the *shorter* of Holmes's life expectancy at the time of McWhorter's retirement, or the life of the new beneficiary, Alan. By measuring the duration of payments by the shorter of two lives rather than by one, TRS's obligation might be reduced. While that may not have been likely in this case, since Alan is younger than Holmes, it remains that Alan's claim

would alter the statutory provisions. Even if a constructive trust could be used in this case to limit payments as the statute would, it is unclear how the same result could be obtained when a retiree has more than one heir or when a will beneficiary is not a natural person. Third, Alan's argument necessarily injects a level of uncertainty into a program that TRS convincingly argues should be as definite as possible to free those affected from disputes over benefits. This case is a poster child for TRS's argument: the court of appeals has sent the parties back to the trial court to try to determine, since McWhorter never took any of the relatively simple steps TRS explained to change or revoke the beneficiary designation, whether she had a change of heart after the divorce. The simple statutory steps for designating, changing, and revoking a beneficiary are designed to avoid litigation over such things as a decedent's intentions.[20]

■ We have said that "[c]onstructive trusts, being remedial in character, have the very broad function of redressing wrong or unjust enrichment in keeping with basic principles of equity and justice."[21] To impose a constructive trust on *optional annuity payments to a designated*

---

**19.** *Compare* TEX. FAM.CODE § 9.302(a) (providing that a divorce decree renders ineffective prior designations of the former spouse as a beneficiary in retirement benefits and other financial plans), *and id.* § 9.302(e) ("This section does not apply to the disposition of a beneficial interest in a retirement benefit or other financial plan of a public retirement system as defined by Section 802.001, Government Code."), *with* TEX. GOV'T CODE §§ 824.101(g), .1012 and .1013.

**20.** Alan argues that *Keen v. Weaver*, 121 S.W.3d 721 (Tex.2003), is "analogous," but it is quite different. There we held that a spouse could effectively waive division of ERISA plan benefits in a divorce decree if the

waiver was specific, knowing, and voluntary. *Id.* at 727–28. But the benefits at issue in *Keen* were payments under simple annuities purchased by the employee and were not at all like the carefully regulated optional annuity provided by TRS involved in this case. *See id.* at 722–23. The waiver in *Keen* did not conflict with a statutory retirement scheme as a waiver in this case would.

**21.** *Meadows v. Bierschwale*, 516 S.W.2d 125, 131 (Tex.1974); *accord Bocanegra v. Aetna Life Ins. Co.*, 605 S.W.2d 848, 851 (Tex.1980) ("A constructive trust is the formula through which the conscience of equity finds expression." (internal quotation marks omitted)).

beneficiary in this situation, we must first attempt to ascertain if that is what the retiree really wanted, then effectively alter the statutory scheme for benefits provided when a beneficiary has been changed, and finally open TRS's retirement system to similar claims by others. We see nothing equitable or just in this. Nor do we think a designated beneficiary wrong or unjustly enriched to receive what the retiree gave him and never took back.

The court of appeals cited *Sanderlin v. Sanderlin,* which holds that general language in an agreement incorporated in a divorce decree, awarding one spouse all rights to retirement benefits, effectively removed the other spouse as designated beneficiary of TRS benefits.[22] No such agreement is involved here. Also, *Sanderlin* does not appear to have involved the optional annuity that is more carefully regulated by statute. Further, as discussed above, in the 1997 legislative session shortly after *Sanderlin* was decided, the statutory provisions were amended to allow for a change in the designation of a spouse as beneficiary of an optional annuity but only if made in compliance with statutory requirements.[23] Finally, *Sanderlin* did not address TRS's argument that its interests and those of all retirees and beneficiaries are better served by strict adherence to the statutory scheme.

Accordingly, we grant Holmes's petition for review and without hearing oral argument,[24] reverse the judgment of the court of appeals and render judgment for Holmes.

---

22. 929 S.W.2d 121, 123 (Tex.App.-San Antonio 1996, writ denied).

23. *Supra* note 8.

24. Tex.R.App. P. 59.1.