**Opinion filed July 12, 2012**



In The

# Eleventh Court of Appeals

_____

## No. 11-10-00263-CV

_____

## MINNIE R. SUAREZ, Appellant

## V.

## GLORIA CASTILLO, AS EXECUTRIX OF THE ESTATE OF SANTIAGO SUAREZ, DECEASED, Appellee

**On Appeal from the 132nd District Court**

**Scurry County, Texas**

**Trial Court Cause No. 22,353**

## M E M O R A N D U M   O P I N I O N

This is an appeal from an enforcement order entered subsequent to the entry of a divorce decree in which the trial court dissolved the marriage of Santiago Suarez and Minnie R. Suarez and made a division of the marital property. When it entered its enforcement order, the trial court ordered Minnie to execute certain documents necessary to effectuate the terms of that decree. She did not do that but, instead, filed this appeal. We affirm.

Santiago retired as an employee of the State of Texas on June 30, 2002, and selected Annuity Option 1 provided for by the Employees Retirement System of Texas (ERS). Santiago

and Minnie were divorced some three and one-half years later on January 27, 2006. In paragraph 7 of the divorce decree, the trial court awarded Santiago the property listed in Schedule A as his sole and separate property and divested Minnie of "all right, title, interest and claim in and to such property." Schedule A, paragraph 6 of the divorce decree provided that Santiago was entitled to "[a]ny and all sums, whether matured or unmatured, accrued or unaccrued, vested or otherwise, together with all increases thereof, the proceeds therefrom, and any other rights related to any profit-sharing plan, retirement plan, pension plan, employee stock option plan, employee saving's plan, accrued unpaid bonuses, or other benefit program existing by reason of [Santiago's] past, present or future employment, including, but not limited to **Employees Retirement System of Texas**." In paragraph 12 of the decree, the trial court ordered Santiago and Minnie to "execute all instruments necessary to effect [the] decree" and that each would have "all appropriate and necessary writs, execution, and process, as many and as often as is necessary to accomplish the execution and final disposition of this judgment." Santiago successfully changed the designated beneficiary of his ERS life insurance policy from Minnie to Gloria Castillo, his sister and executrix of his estate. He also sent ERS a letter asking to make the same beneficiary change to his retirement account and enclosed a copy of the divorce decree. However, Santiago died nineteen days later, without completing the change in designated beneficiary of his retirement plan. The Estate of Santiago Suarez is a contingent beneficiary of the annuity, according to the ERS application for retirement benefits that Santiago completed and signed in 2002 upon his retirement.

On May 17, 2010, Castillo, on behalf of the Estate of Santiago Suarez, made demand upon Minnie to execute a transfer and release of interest on a form acceptable to the ERS. Minnie refused to sign the transfer. On May 28, 2010, a petition for enforcement of property division by contempt was filed. On August 4, 2010, the trial court held a hearing on the petition for enforcement. At the conclusion of the hearing, the trial court granted the petition and ordered Minnie to sign the transfer and release form that was attached to the petitioner's petition for enforcement. The trial court entered its "Order on Motion for Contempt and Order Setting Reappear" on August 18, 2010, ordering Minnie to execute the transfer and release of interest in order to effectuate the division of property as outlined in the decree. On September 15, 2010, the date set for imposition of punishment, Minnie filed a notice of appeal that stayed the imposition

2

of punishment for failing to comply with the court's order. Her direct appeal to this court followed.

## *Jurisdiction*

A court of appeals lacks jurisdiction to review a contempt order by direct appeal. *Tex. Animal Health Comm'n v. Nunley*, 647 S.W.2d 951, 952 (Tex. 1983); *Tracy v. Tracy*, 219 S.W.3d 527, 530 (Tex. App.—Dallas 2007, no pet.). Contempt orders that do not involve confinement may be reviewed via a petition for writ of mandamus. *In re Long*, 984 S.W.2d 623, 625 (Tex. 1999); *Tracy*, 219 S.W.3d at 530; *Adams v. Bell*, 94 S.W.3d 759, 762 (Tex. App.— Eastland 2002, no pet.). In this case, though it is entitled "Order on Motion for Contempt," the court's written order is not a true contempt order. It does not hold Minnie in contempt in the present but, instead, represents a threat of being held in contempt at a later date. The order merely commanded Minnie to sign the necessary documents and warned that she would be punished if she failed to comply by a certain date. Minnie's filing of this direct appeal stayed the trial court from actually holding Minnie in contempt and remanding her to jail for failing to comply with the trial court's order.

Minnie's complaints do not challenge any contempt ruling but, rather, the trial court's ability to alter the designated beneficiary via enforcement of the divorce decree. In her first issue, Minnie argues that the trial court cannot alter the statutory scheme for changing the designated beneficiary. In her second issue, Minnie asserts that the trial court erred in ordering her to sign the waiver and transfer document. Our review of Minnie's brief reveals that these are not two separate issues but one in the same. Because her second issue is merely an extension of her first, we will address them as one argument.

## *Standard of Review*

We review the trial court's ruling on a post-divorce motion for enforcement or clarification of a divorce decree under an abuse of discretion standard. *See In re M.K.R.*, 216 S.W.3d 58, 61 (Tex. App.—Fort Worth 2007, no pet.) (reviewing trial court's ruling on child support arrearages and payment of attorney's fees under abuse of discretion standard). When a trial court makes no separate findings of fact or conclusions of law, we must draw every reasonable inference supported by the record in favor of the trial court's judgment. *See Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990). Additionally, "the judgment of the trial court must be affirmed if it can be upheld on any legal theory that finds support in the evidence."

3

*Lassiter v. Bliss*, 559 S.W.2d 353, 358 (Tex. 1977), *overruled on other grounds by Cherne Indus., Inc. v. Magallanes*, 763 S.W.2d 768 (Tex. 1989).

To determine whether a trial court abused its discretion, we must decide whether the trial court acted without reference to any guiding rules or principles; in other words, we must decide whether the act was arbitrary or unreasonable. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985).

Minnie asserts that the trial court cannot change the beneficiary of the account because doing so would alter the ERS statutory scheme. However, the remedy chosen by the trial court is specifically provided for by statute in TEX. GOV'T CODE ANN. § 814.008(b)(1) (West 2012). Section 814.008(b)(1) provides that a beneficiary can be changed after the ERS member's retirement if the former spouse gives written, notarized consent to the change. Additionally, unlike the statutory scheme governing the Teacher Retirement System, which was discussed in *Holmes v. Kent*, ERS does not prohibit a change in beneficiary after the member's death. *See Holmes v. Kent*, 221 S.W.3d 622, 624 (Tex. 2007) (citing TEX. GOV'T CODE ANN. ch. 824 (West 2012)); *cf.* Section 814.008. In *Holmes*, the Texas Supreme Court reviewed the Texarkana court's decision to craft a constructive trust remedy due to TRS's prohibition against post-mortem beneficiary changes. *Holmes*, 221 S.W.3d 622. TRS filed an amicus brief with the supreme court objecting to the appellate court's solution on policy grounds. *Id*. at 623. In contrast to the circumstances of that case, the Estate's counsel here represented to the trial court that ERS was amenable to the change. The associate general counsel of ERS told the Estate's counsel that ERS would accept the change of beneficiary form that the Estate sent to Minnie.

In *Holmes*, the court was also concerned about whose life or life expectancy would provide the measuring stick for the annuity payments. In that case, imposing a constructive trust may have altered TRS's obligations. Here, however, because of the option chosen by Santiago, the amount of the annuity will not change in any event. TEX GOV'T CODE ANN. § 814.108(c)(1) (West 2012). The number of years that the annuity will be paid out in the event of a post-retirement beneficiary change is also provided for by the ERS statute. Section 814.008 provides that the annuity will be paid to the new beneficiary for the shorter of (1) the remainder of the life expectancy of the beneficiary designated as of the effective date of the retiree's retirement (Minnie) or (2) the remainder of the new beneficiary's life. Section 814.008(c). Furthermore,

4

the application for retirement benefits that was signed by Santiago provided that, if no beneficiary was selected, his estate would receive the annuity as the contingent beneficiary.

The trial court did not alter the ERS statutory scheme when it required Minnie to sign the necessary transfer and release documents. The trial court had divested Minnie of all rights to the ERS account. Further, it had ordered both Santiago and Minnie to execute all instruments necessary to effect the decree. The decree does not say that Santiago alone had the burden of effecting the change. Minnie was given the affirmative duty to execute any necessary instruments to effectuate the terms of the decree. That included the consent form required by the ERS. The trial court did not alter its decree, but merely enforced it. We cannot say that the trial court abused its discretion in requiring Minnie to sign a transfer and release of her interest in the ERS account. Both of Minnie's issues are overruled.

The judgment of the trial court is affirmed.


ERIC KALENAK
JUSTICE


July 12, 2012

Panel consists of: Wright, C.J.,
McCall, J., and Kalenak, J.

5