

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-14-00062-CV

KRISTA LYNNE GARDNER, INDEPENDENT EXECUTRIX OF
THE ESTATE OF LARRY RAY TINER, Appellant

V.

PENNY HEDDIN TINER, Appellee

On Appeal from the 402nd Judicial District Court
Wood County, Texas
Trial Court No. 2006-404

Before Morriss, C.J., Moseley and Burgess, JJ.
Memorandum Opinion by Chief Justice Morriss

## MEMORANDUM OPINION

After Larry Ray Tiner's divorce from his first wife, Penny Heddin Tiner (Penny), and before Larry's marriage to his second wife, Debbie Tiner (Debbie), Larry changed the beneficiary designation on his employee life insurance policy and the 401(k) plan he held through the Employees Retirement System of Texas (ERS). He failed, however, to change the beneficiary designation on his ERS retirement plan, under which, during his marriage to Penny, he had opted to receive a reduced annuity payment for his life and, on his death, to have ERS pay a reduced annuity payment to Penny for her life. This appeal is about that annuity.

After Larry's death, the independent executrix of his estate, Krista Lynne Gardner, sought judgment requiring that the annuity be paid to Larry's widow, Debbie, not to Penny. The trial court in Wood County denied Gardner all relief. We affirm the trial court's judgment.

Larry and Penny were married for fifteen years. During that time, they were both employed by the Texas Department of Transportation. As a state employee, Larry participated in several retirement benefits programs through ERS, including an employee life insurance policy, a 401(k) plan, and the annuity in question here. In April 2000, while still married to Penny, Larry executed a retirement plan selection in which he chose to receive a reduced annuity payment for his lifetime and designated that, after his death, Penny would receive one-half of the reduced annuity payment for her life.[1] Larry retired in 2002. Four years later, on September 6, 2006, Larry and Penny were divorced. In the divorce decree, Larry was awarded, *inter alia*,

---

[1]Under the ERS statutory scheme, an employee may choose an optional service retirement annuity, instead of the standard service retirement annuity, in which he receives reduced annuity payments for his life, and on his death the named beneficiary will receive all or a portion of the reduced annuity payment. *See* TEX. GOV'T CODE ANN. § 814.108 (West 2012).

2

"[a]ny and all retirement funds in his name alone," "free and clear of any right, title or interest of" Penny. However, the divorce decree did not contain any clause requiring the parties to take any action, requiring them to execute any documents to complete the transfer of property interests, or requiring ERS to change the beneficiary under any retirement account. The parties agree that, sometime after his divorce from Penny, Larry married Debbie and remained married to her until his May 9, 2013, death. Gardner asserts, and Penny does not dispute, that sometime after the divorce, Larry named Debbie as the beneficiary of the employee life insurance policy and the 401(k) he held through ERS. However, as we have stated, between the date of his retirement and his death, Larry never changed his beneficiary designation under the annuity and never requested Penny to consent to such a change. After Larry's death, Penny, as his designated beneficiary, began receiving the reduced annuity payment. In September 2013, the attorney for Larry's estate asked Penny to consent to a change of beneficiary of the annuity to Debbie. Penny refused.

Gardner then filed a petition for a declaratory judgment in the district court that entered the divorce decree, asking the trial court to find that Penny has relinquished any and all rights to the annuity; find that Debbie, as Larry's surviving spouse and beneficiary under his will, is entitled to the benefits under the annuity; and order ERS to change the beneficiary of the annuity to Debbie.

On appeal, Gardner claims that the trial court abused its discretion by failing to order ERS to change the beneficiary of the annuity from Penny to Debbie, which she contends is required by Section 814.008 of the Texas Government Code. *See* TEX. GOV'T CODE ANN.

3

§ 814.008 (West 2012). She argues that, under the Texas Supreme Court's decision in *Kean v. Weaver* and the Fourteenth Court of Appeals' decision in *Smalley v. Smalley*, the trial court should have found that Penny waived and relinquished her rights as beneficiary of the annuity and should have ordered ERS to change the beneficiary to Debbie. *See Keen v. Weaver*, 121 S.W.3d 721 (Tex. 2003), *abrogated on other grounds by Kennedy v. Plan Adm'r for Dont Savs. & Inv. Plan*, 555 U.S. 285 (2009); *Smalley v. Smalley*, 399 S.W.3d 631 (Tex. App.—Houston [14th Dist.] 2013, no pet.). We disagree.

We review the trial court's ruling for an abuse of discretion. *In re Marriage of Ford*, 435 S.W.3d 347, 350 (Tex. App.—Texarkana 2014, no pet.) (citing *Lucy v. Lucy*, 162 S.W.3d 770, 774 (Tex. App.—El Paso 2005, no pet.)). An abuse of discretion occurs if the trial court acts without reference to any guiding rules and principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985); *Ford*, 435 S.W.3d at 350. In considering this question, "we view the evidence in a light most favorable to the court's decision and indulge every legal presumption in favor of its judgment." *Ford*, 435 S.W.3d at 350 (citing *In re J.I.Z.*, 170 S.W.3d 881, 883 (Tex. App.—Corpus Christi 2005, no pet.)).

Both *Keen* and *Smalley* involved an alleged waiver, as exhibited by specific language in a divorce decree, by a non-employee spouse relative to the employee spouse's employer benefit plan. *Keen*, 121 S.W.2d at 722, 727–28; *Smalley*, 399 S.W.3d at 634–35, 641. While we do not believe that the language of the divorce decree in this case reaches the degree of specificity seen in either of these cases and also question whether it is sufficiently specific to find that Penny

4

waived her interest, we need not reach this question.[2] Rather, we conclude that this case is controlled by the Texas Supreme Court's decision in *Holmes v. Kent*, the facts of which are more like the facts before us. *See Holmes v. Kent*, 221 S.W.3d 622 (Tex. 2007).

In *Holmes*, Linda Ann McWhorter was married to Tommy Joe Holmes when she retired from teaching in 1997. At that time, she elected to receive an optional annuity through the Teacher's Retirement System of Texas (TRS) whereby she would receive a reduced annuity payment during her life, and thereafter, her designated beneficiary, Holmes, would receive three-fourths of the reduced payment for his lifetime. *Id.* at 625–26; *see* TEX. GOV'T CODE ANN. § 824.204(c)(5) (West 2012). A year later, while going through a divorce from Holmes, McWhorter attempted to change the beneficiary of her TRS retirement benefits. Although TRS accepted the change as to some benefits, it notified McWhorter that it was not effective as to the optional annuity, which required a specific procedure to change the beneficiary,[3] and advised her

---

[2]In addition, both *Keen* and *Smalley* involved employer retirement benefit plans governed by federal statutes that are not applicable to the annuity in this case, which is governed by state law. *See Keen*, 121 S.W.2d at 722, 727–28; *Smalley*, 399 S.W.3d at 634, 637–39.

[3]The relevant section of the Government Code covering this procedure at the time provided.

> (a)  A retiree receiving an optional retirement annuity under Section 824.204(c)(1), (c)(2), or (c)(5) . . . may change the designated beneficiary as provided by this section for the benefits payable after the retiree's death under those sections.
> (b)  If the beneficiary designated at the time of the retiree's retirement is the spouse or former spouse of the retiree:
>> (1)  the spouse or former spouse must give written, notarized consent to the change; or
>> (2)  a court with jurisdiction over the marriage must have ordered the change.
> (c)  A beneficiary designated under this section is entitled on the retiree's death to receive monthly payments of the survivor's portion of the retiree's optional retirement annuity for the shorter of:
>> (1)  the remainder of the life expectancy of the beneficiary designated as of the effective date of the retiree's retirement; or
>> (2)  the remainder of the new beneficiary's life.

of the procedure. *Holmes*, 221 S.W.3d at 626. A year later, the divorce became final, and the

divorce decree awarded McWhorter:

> [a]ny and all sums, whether matured or unmatured, accrued or unaccrued, vested or otherwise, together with all increases thereof, the proceeds therefrom, and any other rights related to [McWhorter's] retirement benefits through the Teacher Retirement System, and any other profit-sharing plan, retirement plan, pension plan, employee stock option plan, employee savings plan, accrued unpaid bonuses, or other benefit program existing by reason of [McWhorter's] past or present employment.

*Id*. It also "divested [Holmes] of all right, title, interest, and claim in and to such property" and

required him to take steps to effect the decree. *Id.* McWhorter's attorney then submitted the

divorce decree to TRS, which responded that the decree was insufficient under the statute since it

did not clearly order the change in beneficiary. TRS suggested that either McWhorter have the

decree clarified with certain specified language or submit a notarized consent by Holmes. *Id*. at

626–27. McWhorter never complied and died testate one year later, leaving all of her property to

her son, Alan Kent. TRS, pursuant to the beneficiary designations on file, paid the other benefits

to Kent and began making the optional annuity payments to Holmes. Kent sued Holmes seeking

to enforce the divorce decree and to compel him to execute whatever instruments TRS required

to transfer annuity payments to Kent. He also requested the imposition of a constructive trust on

any payments Holmes had received. *Id.* at 627. After the trial court granted summary judgment

for Holmes, this Court held that, since the beneficiary designation had not been changed as

---

> (d)    A retiree may not change a beneficiary under this section after retirement if the retiree has previously changed or designated after retirement a beneficiary for optional retirement annuity payments under this subtitle."

Acts of May 20, 1997, 75th Leg., R.S., ch. 1416, § 14, 1997 Tex. Gen. Laws 5297, 5300 (amended 2011, 2013) (current version at TEX. GOV'T. CODE ANN. §824.1013 (West Supp. 2014).

required by statute, TRS was required to make the payments to Holmes. *Kent v. Holmes*, 139 S.W.3d 120, 133 (Tex. App.—Texarkana 2004), *rev'd on other grounds*, 221 S.W.3d 622 (Tex. 2007). We also held that Holmes' right to any annuity payments had been divested by the divorce decree and that McWhorter's estate was entitled to a constructive trust on the payments, if she did not intend for Holmes to receive the payments. *Id*. at 124. We then remanded the case to the trial court to determine McWhorter's intentions.

On appeal, the Supreme Court agreed with us that the beneficiary designation had not been changed, holding that, under the clear provisions of the statute, "[i]f the person is the retiree's spouse or former spouse, the designation may be changed only as provided by statute: that is, only if the spouse or former spouse signs a notarized consent, or if the divorce decree orders the change." *Holmes*, 221 S.W.3d at 627. However, the Supreme Court reversed the imposition of a constructive trust on the payments received by Holmes. *Id.* at 627–29. It reasoned that imposing a constructive trust would circumvent "the statutory requirements for changing a TRS beneficiary" and would inject uncertainty into a program that should be as definite as possible and free from disputes over benefits.[4] *Id.* at 628. The court went on to emphasize the judicial economy of upholding the statutory requirements for changing the beneficiary, noting that the "simple statutory steps for designating, changing, and revoking a beneficiary are designed to avoid litigation over such things as a decedent's intentions." *Id.* The court saw nothing inequitable in requiring the retiree to strictly follow the statutory scheme to

---

[4]The court also rejected Kent's claim, not pertinent in this case, that the constructive trust should receive the reduced payments for the duration of Holmes' life, which would have changed the statutory scheme limiting payments to the shorter of Holmes' life or Kent's life. *Holmes*, 221 S.W.3d at 628.

change her designated beneficiary, nor in the beneficiary receiving "what the retiree gave him and never took back." *Id. at* 628–29. Thus, even though the divorce decree divested Holmes of any rights in McWhorter's annuity and required that he execute all papers necessary to carry out the decree, any claimed waiver or relinquishment of his rights resulting from this would not be effective to bar his right to the benefits. *Id*. at 627–29.

Although this case involves ERS rather than TRS, the statutory scheme for changing the beneficiary of an optional annuity when the designated beneficiary is a spouse or former spouse is almost identical. Under the provisions governing ERS optional annuities, the Texas Government Code provides, in pertinent part,

> (a) A retiree receiving an optional service or disability retirement annuity … described by Section 814.108(c) (1), (c) (2), or (c) (5) may change the designated beneficiary as provided by this section for the benefits payable after the retiree's death.

> (b) If the beneficiary designated at the time of the retiree's retirement is the spouse or former spouse of the retiree:

> > (1) the spouse or former spouse must give written, notarized consent to the change; or

> > (2) a court with jurisdiction over the marriage must have ordered the change.

> (c) A beneficiary designated under this section is entitled on the retiree's death to receive monthly payments of the survivor's portion of the retiree's optional retirement annuity for the shorter of:

> > (1) the remainder of the life expectancy of the beneficiary designated as of the effective date of the retiree's retirement; or

> > (2) the remainder of the new beneficiary's life.

8

> (d) A retiree may not change a beneficiary under this section after retirement if the retiree has previously changed or designated after retirement a beneficiary for optional retirement annuity payments under this subtitle.

TEX. GOV'T CODE ANN. § 814.008. The operative provisions of this statute are identical to the statute considered in *Holmes*. In this case, Larry chose the optional annuity described in Section 814.108(c)(2)[5] and designated Penny, his then spouse, as beneficiary of the benefits payable after his death. Certainly, the facts in *Holmes* would have supported more strongly an argument for a waiver of rights to benefits by the non-employee spouse and an exception to the statutory scheme. There, the divorce decree specifically identified the TRS retirement benefits and required the parties to execute instruments to carry out the decree, and McWhorter attempted to change her beneficiary under the optional annuity. None of those facts are present in this case. Since the same policy considerations, that the Texas high court held required strict adherence to the statutory scheme in *Holmes* and barred any claimed waiver, apply equally to the annuity in this case, *Holmes* is controlling here.

One of our sister courts has attempted to limit *Holmes*' applicability in cases involving ERS. *See Suarez v. Castillo*, No. 11-10-00263-CV, 2012 WL 2862383, at \*2–3 (Tex. App.—Eastland July 12, 2012, pet. denied) (mem. op.). While we may not agree with all the reasoning in *Suarez*, the facts in *Suarez* are distinguishable from ours. In that case, the divorce decree divested the non-employee spouse of all right, title, interest, and claim to the employee spouse's retirement benefits, specifically identifying those administered by ERS, and required the parties

---

[5]That option allows an eligible person to choose that, "after the retiree's death, one-half of the reduced annuity is payable throughout the life of the person designated by the retiree before retirement. . . ." TEX. GOV'T CODE ANN. § 814.108(c)(2) (West 2012).

to execute all instruments necessary to carry out the decree. *Id.* at *1. After the divorce, the employee spouse sent a letter requesting a change of beneficiary and a copy of the divorce decree to ERS, but died nineteen days later, before completing the change. The employee spouse's estate sought enforcement of the divorce decree, and the trial court enforced its decree by ordering the non-employee spouse to sign a transfer of the retirement benefits. *Id.* The Eastland court noted that, in the divorce decree, the non-employee spouse "was given the affirmative duty to execute any necessary instruments to effectuate the terms of the decree," which "included the consent form required by the ERS," and that the trial court merely enforced its decree. *Id.* at *3. The court of appeals observed that this remedy is within the ERS statutory scheme. *Id.* at *2 (citing TEX. GOV'T CODE ANN. § 814.008(b)(1)). Therefore, the court of appeals held that the trial court had not abused its discretion in requiring the non-employee spouse to sign the transfer of retirement benefits. *Id.* at *2.

In this case, however, the divorce decree neither specifically identified the retirement benefits administered by ERS nor required the parties to execute instruments necessary to effect the decree. Further, although there is testimony that Larry changed the beneficiary of his other retirement accounts, there is no evidence that, in the six and one-half years between his divorce and death, he ever sought to change the beneficiary of the annuity. Under the facts of this case, the ERS statutory scheme, and the controlling caselaw, we cannot say that the trial court abused its discretion in denying Gardner her requested relief. Therefore, Gardner's point of error is overruled.

10

We affirm the judgment of the trial court.


Josh R. Morriss III<br>Chief Justice


Date Submitted:     March 2, 2015
Date Decided:       March 17, 2015